OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal spotlights the three-step test for determining whether peremptory challenges have been used to exclude
 
 *420
 
 potential jurors on account of race
 
 (see Batson v Kentucky,
 
 476 US 79, 94-98 [1986]). As a first step, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges. Second, the nonmoving party must give a race-neutral reason for each potential juror challenged. In step three, the court determines whether the reason given is merely a pretext for discrimination. Against this background we evaluate the challenged voir dire in the present case, in which defendant’s conviction for criminal possession of stolen property — an automobile — was affirmed by the Appellate Division.
 

 I.
 

 During the first round of jury selection, the prosecutor exercised peremptory challenges to three of the first 12 prospective jurors. After the prosecutor removed one Hispanic and two African-American women, defense counsel stated, “I am wondering if we are having a Batson issue here.” Although the prosecutor maintained that the defense had failed to make a prima facie case, and thus no race-neutral reasons were yet required, the court responded, “I am asking anyway. Why have you challenged them?” The prosecutor replied that two, Torres and Gordon, were challenged for family involvement with police officers, and the third, Mapp, because her son had died and the prosecutor “didn’t think it was appropriate to go into it.” The following colloquy ensued:
 

 “the court: Clearly there is good reason to challenge Torres and Gordon. And the only question is Mapp, but that doesn’t make a pattern. I can understand not wanting to go into her son’s death. The challenge is denied. Overruled. Let’s go with defense peremptories.
 

 “[Defense counsel]: I would just like to speak as to that. I don’t see how it doesn’t make a pattern.
 

 “the court: There are reasons to challenge.
 

 “[Defense counsel]: In the back row we have one black man left, otherwise he has knocked [out] every one—
 

 “the court: Let’s not argue. Let’s not belabor it. There are very good reasons to challenge Torres and Gordon where the whole case reflects on police
 
 *421
 
 officers, and both * * * have serious problems in their family with police officers.
 

 “[Defense counsel]: Torres and Gordon.
 

 “the court: Both had members of their family—
 

 “[Defense counsel]: They don’t seem to [be] serious. She said a cop embarrassed her son and she told him not to do anything about it. How is that elevated to a serious problem with the police? She answered all the other questions about the police as honestly and openly as everyone else.
 

 “the court: That’s a good reason to challenge. Denied. You have an exception.
 

 “[Defense counsel]: Thank you.”
 

 Before us, defendant maintains that the court improperly revisited step one — the prima facie case — after the prosecutor had given his reasons for the challenged strikes; that any possible ruling on pretext as to prospective juror Mapp is unsupported by the record; and that inadequacies in the record were chargeable to the court’s impatience in conducting the inquiry. Although we agree that the trial court’s analysis was less than ideal, because we conclude that defendant — who bore the ultimate burden of persuasion — failed at the time to raise his present claims, we affirm.
 

 II.
 

 In furtherance of the United States Supreme Court’s “unceasing efforts to eradicate racial discrimination” in the jury selection process, the Court in
 
 Batson v Kentucky
 
 (476 US at 85, 94-98) prescribed a now-familiar three-step test for determining whether peremptory challenges are based on invidious discrimination. That test is drawn from “disparate treatment” cases under title VII of the Civil Rights Act of 1964
 
 (id.
 
 at 94 n 18).
 

 Under
 
 Batson
 
 and its progeny, the party claiming discriminatory use of peremptories must first make out a prima facie case of purposeful discrimination by showing that the facts and circumstances of the voir dire raise an inference that the other party excused one or more jurors for an impermissible reason. “There are no fixed rules for determining what evidence will * * * establish a prima facie case of discrimination”
 
 (People v Bolling,
 
 79 NY2d 317, 323-324 [1992]). Although as part of
 
 *422
 
 their prima facie case parties often rely on numbers to show a pattern of strikes against a particular group of jurors, a prima facie case may be made based on the peremptory challenge of a single juror that gives rise to an inference of discrimination.
 

 Once a prima facie showing of discrimination is made, the nonmovant must come forward with a race-neutral explanation for each challenged peremptory — step two. If the nonmovant cannot meet this burden, an equal protection violation is established. However, once race-neutral reasons are given, the inference of discrimination is overcome. At this second stage the reasons need be only facially permissible.
 

 The third step of the
 
 Batson
 
 inquiry requires the trial court to make an ultimate determination on the issue of discriminatory intent based on all of the facts and circumstances presented. Unlike step two, this determination is a question of fact, focused on the credibility of the race-neutral reasons. Courts may determine that the proffered reasons are pretextual without further arguments by the moving party, but the moving party has the ultimate burden of persuading the court that the reasons are merely a pretext for intentional discrimination (Pe
 
 ople v Payne,
 
 88 NY2d 172, 183-184 [1996]). It is therefore the moving party’s burden to make a record that would support a finding of pretext.
 

 As should be clear from this summary, the
 
 Batson
 
 procedure effectuates its purpose only if the steps are followed in sequence. It makes no sense, for example, to revisit the issue of whether a prima facie case has been made once the prosecutor has come forward with race-neutral reasons. At that point, the presumption of discrimination raised by the movant’s initial prima facie case has been rebutted, and to revisit the adequacy of the step one showing “unnecessarily evade [s] the ultimate question of discrimination”
 
 (Durant v Strack,
 
 151 F Supp 2d 226, 236 [ED NY 2001]). Similarly, when courts combine steps two and three by requiring the nonmoving party to provide
 
 nonpretextual
 
 race-neutral reasons, they inappropriately shift the ultimate burden from the moving party
 
 (see Payne,
 
 88 NY2d at 186-187).
 

 III.
 

 Applying these principles to the present case, we conclude that although the court improperly rushed and compressed the
 
 Batson
 
 inquiry, defendant failed to meet his burden of establishing an equal protection violation.
 

 When defendant first raised a
 
 Batson
 
 objection, the trial court should have decided whether the defense met its step-
 
 *423
 
 one burden of establishing a prima facie case of discrimination. That issue became moot when the People stated their reasons and the court ruled on the ultimate issue
 
 (see People v James,
 
 99 NY2d 264 [2002]). The prosecutor’s reasons for all three challenged strikes were facially race-neutral, and thus met the step-two burden of production. The court appears to have melded steps two and three, however, by immediately concluding that the reasons were acceptable as to Torres and Gordon, without first allowing defense counsel to make an argument that the reasons were pretextual. This practice falls short of a “meaningful inquiry into the question of discrimination,” and we caution trial courts to avoid undue haste and compression in this crucial process
 
 (Jordan v Lefevre,
 
 206 F3d 196, 201 [2d Cir 2000]).
 

 In this case the proffered reasons as to Torres and Gordon are clearly nonpretextual, and defendant does not challenge those reasons on appeal. The situation is different with respect to prospective juror Mapp. The trial court was wrong in dismissing defendant’s
 
 Batson
 
 challenge with the statement that “the only question is Mapp, but that doesn’t make a pattern.” The fact that satisfactory reasons were given for striking two other jurors does not defeat defendant’s prima facie case as to Mapp. Improper removal of even a single juror may be a violation of equal protection. The court should have moved on to a determination of pretext, or step three.
 

 Here, however, defendant’s argument regarding Mapp is unpreserved and cannot be reached. Based on this record, the prosecutor’s proffered reason for challenging Mapp — the death of her child — also might have been nonpretextual
 
 (see, by contrast, Jordan,
 
 206 F3d at 201). Matters such as the prospective juror’s demeanor may well have prompted the court’s conclusion that “I can understand not wanting to go into her son’s death.” While defense counsel persisted in her challenge regarding Torres and Gordon despite the court’s impatience, she said nothing further about Mapp at a time when any ambiguity — if indeed she actually perceived any ambiguity — could have been clarified.
 

 Finally, we reject defendant’s argument that counsel was “squelched” and not permitted to make her pretext case with respect to Mapp. Despite the sometimes enormous pressures of trial, it is for courts to discharge their responsibilities under the law and for counsel to voice objection when they do not. In particular, we underscore the importance both of trial court attention to each of
 
 Batson’s
 
 well-articulated, sequential steps,
 
 *424
 
 and of trial counsel attention to placing their objections on the record so they may be addressed by the court. In this way, the law can be observed and potential error avoided.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed.