■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAMON MORGAN, Appellant. [806 NYS2d 742]—

Cardona, P.J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered January 22, 2002, upon a verdict convicting defendant of the crimes of robbery in the first degree, robbery in the second degree (two counts),

---

grand larceny in the third degree, assault in the second degree, burglary in the second degree (two counts) and criminal possession of stolen property in the fourth degree.

In 2001, defendant was indicted and charged with the crimes of robbery in the first degree, robbery in the second degree (two counts), burglary in the second degree (two counts), grand larceny in the third degree, assault in the second degree and criminal possession of stolen property in the fourth degree in connection with his purported involvement, along with his mother, Yvette Morgan, in the armed robbery of an Off-Track Betting (hereinafter OTB) parlor in the City of Schenectady, Schenectady County. At the ensuing jury trial, the People advanced the theory that Morgan, an OTB employee, had orchestrated the hold-up which was later perpetrated by defendant and his younger brother. Defendant, on the other hand, put forth an alibi defense, claiming to have been in New York City on the day in question. Defendant was convicted as charged and sentenced to an aggregate term of 25 years in prison.

Defendant first alleges a violation of *Batson v Kentucky* (476 US 79 [1986]) in the People's use of peremptory challenges to excuse the only two African-American members in his jury pool. In response, the People do not claim that defendant failed to "make out a prima facie case of purposeful discrimination by showing that the facts and circumstances of the voir dire raise an inference that the [People] excused [the] jurors for an impermissible reason" (*People v Smocum*, 99 NY2d 418, 421 [2003]; *see generally People v Childress*, 81 NY2d 263, 266-267 [1993]; *People v Bolling*, 79 NY2d 317, 323-324 [1992]). Thus, our analysis is limited to determining whether the People advanced a sufficient race-neutral and nonpretextual rationale for excusing the jurors in question (*see generally Hernandez v New York*, 500 US 352 [1991]; *People v Smocum, supra* at 422).

With regard to prospective juror No. 14, the People explained that the challenge was based on, among other considerations, the fact that the juror had a son who had been successfully prosecuted by the District Attorney's office (*see People v Anaya*, 206 AD2d 380, 380-381 [1994], *lv denied* 84 NY2d 865 [1994]). Mindful that the People's race-neutral explanation for the exercise of a peremptory challenge does not have to be plausible or persuasive (*see People v Skervin*, 13 AD3d 661, 662 [2004], *lv denied* 5 NY3d 833 [2005]) and need only be "facially permissible" (*People v Smocum, supra* at 422), we conclude that the People overcame whatever inference of discrimination was set forth by the defense in connection with that juror (*see People v Richardson*, 193 AD2d 969, 971-972 [1993], *lv denied* 82 NY2d

725 [1993]; *People v Dabbs*, 192 AD2d 932, 934 [1993], *lv denied* 82 NY2d 707 [1993]; *see also People v Ball*, 11 AD3d 904, 905 [2004], *lvs denied* 3 NY3d 755, 4 NY3d 741 [2004]). Moreover, inasmuch as defendant declined to address the issue further during the colloquy with County Court, we cannot conclude that he met his "ultimate burden of showing that the reasons given were merely a pretext for intentional discrimination" (*People v Skervin, supra* at 662; *see People v Payne*, 88 NY2d 172, 181 [1996]). Accordingly, there exists no basis for us to disturb County Court's determination that the People's challenge to juror No. 14 was based upon a nonpretextual, race-neutral rationale.

As to juror No. 149, the People explained during voir dire that he had been challenged due to his demeanor, his evasive answers to the prosecutor's questions and a perceived antagonism between him and the prosecutor. Under the circumstances, we find permissible justifications for the exercise of a peremptory challenge (*see generally People v Payne, supra* at 183; *see also United States v Hinton*, 94 F3d 396, 397-398 [1996]). Further, we afford considerable deference to County Court's determination that the People's proffered explanations were nonpretextual, especially since the court was present for the entire voir dire and uniquely situated to assess the demeanor and body language of this juror (*see People v Hernandez*, 75 NY2d 350, 356-357 [1990], *affd* 500 US 352 [1991]; *see also People v Bennett*, 206 AD2d 382, 383 [1994], *lv denied* 85 NY2d 859 [1995]).

Defendant next ascribes error to the manner in which he was cross-examined by the People. Specifically, defendant takes issue with the People's use of a threatening letter allegedly delivered to prosecution witness Danny Erazo and the prosecution's reference to defendant's tattoo depicting the grim reaper armed with a smoking gun which is captioned, "Whatever it takes." Prior to his testimony, defendant attempted to preclude references to his tattoo as unduly prejudicial. The People indicated that the tattoo's relevance was linked to the letter, which apparently warned Erazo not to testify and was signed, "The Grim Reaper." After extensive argument, County Court concluded that the tattoo could be utilized as a basis for the People's inquiry into defendant's potential authorship of the letter, which was itself germane to defendant's credibility as a witness. Subsequently, the People had defendant show his tattoo to the jury and describe the significance of its details. The People then presented the letter to defendant and, after he claimed he never saw it before, asked him about the substance of the letter, mak-

ing it known that it was subscribed "The Grim Reaper" and indicating that it threatened Erazo.[1]

Although defendant's tattoo may have provided a good-faith basis for inquiry concerning his potential authorship of the letter (*see generally People v Sorge*, 301 NY 198, 200-201 [1950]), only a few questions concerning the tattoo, rather than full presentation thereof, were necessary to provide an adequate foundation for discussion of the letter. Moreover, it is apparent that inquiry concerning the letter was unjustified absent an independent theory for its relevance (*see e.g. People v Randolph*, 18 AD3d 1013, 1015-1016 [2005]; *People v Hendricks*, 4 AD3d 798, 799 [2004], *lv denied* 2 NY3d 800 [2004]).

Here, County Court permitted questioning concerning the letter on the exclusive ground that defendant placed his credibility at issue by testifying.[2] This was a permissible exercise of the court's discretion provided that "the probative worth of the evidence on the issue of defendant's credibility [outweighed] 'the risk of unfair prejudice' " (*People v Williams*, 56 NY2d 236, 238-239 [1982], quoting *People v Sandoval*, 34 NY2d 371, 375 [1974]; *cf. People v Ventimiglia*, 52 NY2d 350, 359-360 [1981]). In our view, evidence concerning the attempted intimidation of a witness via threats of violence bears a tangential relationship to a defendant's veracity or honesty and is thus probative on the issue of the defendant's credibility (*compare People v Rockwell*, 18 AD3d 969, 970-971 [2005], *lv denied* 5 NY3d 768 [2005]; *People v Mangan*, 258 AD2d 819, 820-821 [1999], *lv denied* 93 NY2d 927 [1999]). Yet, under the circumstances presented, the prejudice inherent in such evidence (*see People v Davis*, 44 NY2d 269, 274 [1978]; *see also People v Miller*, 91 NY2d 372, 378 [1998]; *People v Chisholm*, 282 AD2d 470 [2001], *lv denied* 96 NY2d 899 [2001]) outweighed its probative value and the People's use of the tattoo and letter exceeded the bounds of permissible cross-examination.

Ultimately, however, we conclude that reversal of defendant's convictions is not required since the error was harmless. Questioning concerning the letter and tattoo occupied a small percentage of defendant's cross-examination and, notably, there was only one reference to the fact that the letter threatened

---

1. Defendant objected to the prosecutor's question concerning the message of the letter and moved for a mistrial. Although County Court sustained defendant's objection "as to form," the motion for a mistrial was denied.

2. We parenthetically note that, despite defendant's request (*see* CPL 240.43), the letter and its potential use as a method of impeaching defendant's credibility was not a subject of the pretrial *Sandoval* hearing in this matter (*see generally People v Matthews*, 68 NY2d 118, 122-123 [1986]).

Erazo. Conversely, defendant admitted to police that he held up the OTB in order to assist Morgan financially, and Morgan testified that defendant gave her a substantial sum just days after the robbery. Defendant also admitted his involvement in a taped conversation with Erazo. Moreover, two OTB staff members, one of whom was familiar with defendant, identified him as the perpetrator who assaulted them and defendant's fingerprints were found at the rear entrance of the parlor. Given the overwhelming evidence that defendant committed the crimes charged, it cannot be said that there is a substantial probability that defendant would have been acquitted but for the references to his tattoo and the letter (*see People v Brown*, 20 AD3d 577, 579 [2005], *lv denied* 5 NY3d 826 [2005]; *People v Coager*, 266 AD2d 645, 646-647 [1999], *lv denied* 94 NY2d 917 [2000]; *People v Nusbaum*, 222 AD2d 723, 726 [1995], *lv denied* 87 NY2d 1023 [1996]; *see generally People v Crimmins*, 36 NY2d 230 [1975]).

Turning to defendant's remaining contentions, we do not agree that County Court abused its discretion in precluding defendant from eliciting testimony from a witness about her observations of suspicious individuals at the OTB parlor in the weeks preceding the holdup. Inasmuch as the witness was not at the OTB on the actual day of the crimes, defendant failed to establish that the probative nature of her testimony on the issue of possible third-party culpability outweighed the countervailing considerations of undue delay and juror confusion (*see generally People v Primo*, 96 NY2d 351, 355-356 [2001]). Finally, we do not deem the imposition of a 25-year aggregate prison sentence (*see* Penal Law § 70.02 [3] [a]) to be harsh and excessive given the senseless and violent nature of the crimes committed (*see People v Cancer*, 16 AD3d 835, 840 [2005], *lv denied* 5 NY3d 826 [2005]; *People v Mitchell*, 289 AD2d 776, 779-780 [2001], *lv denied* 98 NY2d 653 [2002]).

Mercure, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.