FOURTH DEPARTMENT, JULY, 2010

(July 2, 2010)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD MORGAN, Appellant. [903 NYS2d 851]—

Appeal from a judgment of the Supreme Court, Erie County

(Penny M. Wolfgang, J.), rendered September 25, 2006. The judgment convicted defendant, upon a jury verdict, of burglary in the second degree, grand larceny in the third degree, criminal possession of a forged instrument in the second degree and criminal possession of a controlled substance in the seventh degree.

It is hereby ordered that the judgment so appealed from is reversed on the law and a new trial is granted.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of, inter alia, burglary in the second degree (Penal Law § 140.25 [2]), defendant contends that Supreme Court erred in permitting the prosecutor to exercise a peremptory challenge to exclude a black prospective juror. We agree. Following defendant's *Batson* objection, the prosecutor explained that she excluded the prospective juror in question because (1) the prospective juror indicated that she had served on a jury in a criminal case "years ago" but could not recall what the case involved; (2) the prospective juror acknowledged that she knew people who used cocaine; and (3) the prospective juror's son had been accused of a crime "years ago" and was not convicted. In response to the prosecutor's explanation, defense counsel noted that another prospective juror had been accused of a crime and was not challenged by the prosecutor on that or any other ground. Likewise, defense counsel noted that another prospective juror admitted that he knew someone who used cocaine and that prospective juror also was not challenged by the prosecutor. Finally, defense counsel contended that the son of the challenged prospective juror, "not herself, twenty years ago in Family Court as a juvenile might have had something. And for the fact that she can't remember something that she served on years ago, I don't see how that's relevant. I haven't heard one race neutral explanation yet." Upon the court's denial of defendant's *Batson* challenge, defense counsel asked the court to articulate the grounds for its ruling. In response, the court stated only that "[t]he grounds were quite sufficient as stated by the District Attorney," and that "there is no pattern of discrimination."

On the record before us, we agree with defendant that reversal is required based on the court's denial of defendant's *Batson* challenge. Trial courts are required to follow a three-step procedure in determining whether a peremptory challenge has been used to exclude a prospective juror based on race: "As a first step, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges. Second, the nonmoving party must give a race-

neutral reason for each potential juror challenged. In step three, the court determines whether the reason given is merely a pretext for discrimination" (*People v Smocum*, 99 NY2d 418, 420 [2003]; *see People v Payne*, 88 NY2d 172, 181 [1996]). "The third step of the *Batson* inquiry requires the trial court to make an ultimate determination on the issue of discriminatory intent based on all of the facts and circumstances presented" (*Smocum*, 99 NY2d at 422). That determination presents a "question of fact, focused on the credibility of the race-neutral reasons" (*id.*; *see generally People v Allen*, 86 NY2d 101, 110 [1995]), and thus great deference is accorded to the determination of the trial court (*see Hernandez v New York*, 500 US 352, 364-365 [1991]; *People v Carter*, 38 AD3d 1256, 1256-1257 [2007], *lv denied* 8 NY3d 982 [2007]).

In this case, the prosecutor met her "quite minimal" burden at the second stage of the *Batson* inquiry (*Payne*, 88 NY2d at 183), inasmuch as she articulated three "facially neutral" reasons for excluding the prospective juror at issue (*Allen*, 86 NY2d at 109; *see Smocum*, 99 NY2d at 422). At that point, the court should have proceeded to the third step of the *Batson* inquiry, namely, "a determination of pretext" (*Smocum*, 99 NY2d at 423). Instead, however, the court summarily concluded that the prosecutor's stated reasons for exercising the peremptory challenge in question were sufficient without determining whether those reasons "should be believed" (*Hernandez*, 500 US at 365; *see Smocum*, 99 NY2d at 422-423; *see also Dolphy v Mantello*, 552 F3d 236, 239 [2009]; *Jordan v Lefevre*, 206 F3d 196, 201 [2000]). The court's acceptance of the prosecutor's reasons without an assessment of credibility is particularly troublesome where, as here, the defendant rebutted each of the proffered reasons. Defendant rebutted two of the prosecutor's race-neutral explanations by showing that similarly-situated prospective jurors were not challenged by the prosecutor. The remaining reason articulated by the prosecutor—that the prospective juror could not remember the specifics of a trial in which she had served as a juror more than a decade earlier—was not relevant to the prospective juror's qualifications to serve in this case. Contrary to the prosecutor's assertion that the prospective juror did not "remember what the verdict was" in the prior case the record reflects that the prospective juror was never asked such a question. Nonetheless, the court merely accepted the prosecutor's explanations without determining whether those explanations were pretextual, a practice that, in our view, "falls short of a 'meaningful inquiry into the question of discrimination' " (*Smocum*, 99 NY2d at 423, quoting *Jordan*, 206 F3d at 201).

Inasmuch as the court failed to make the requisite credibility determination at step three of the *Batson* inquiry, there is no basis upon which to defer to the trial court on this record (*see Dolphy*, 552 F3d at 239; *Jordan*, 206 F3d at 201). Although the dissent concludes that the prospective juror was not similarly situated to the other prospective jurors who ultimately were seated because those jurors did not possess all three characteristics cited by the prosecutor, neither the prosecutor nor the court articulated that ground as a basis for denying defendant's *Batson* challenge. In our view, a post hoc justification for a party's use of a peremptory challenge cannot excuse the failure of a trial court to engage in the requisite inquiry at the time of trial. As the Court of Appeals stated in *Payne* (88 NY2d at 183), trial courts "must in all cases make a step three pretext determination . . . [and it is] the trial courts' responsibility to make a sufficient record to allow for meaningful appellate review that insures and reflects that each party fulfills its burden and has an opportunity for input." That record should "reflect[ ] the basis for [the trial court's] rulings" (*id.* at 184). Here, the court failed to make *any* determination on the record with respect to the issue of pretext. Even assuming, arguendo, that the court "implicitly determined" that the prosecutor's explanations were not pretextual (*People v Parker*, 304 AD2d 146, 156 [2003], *lv denied* 100 NY2d 585 [2003]), we conclude that such a determination is not supported by the record in this case (*cf. People v Robinson*, 1 AD3d 985, 986 [2003], *lv denied* 1 NY3d 633 [2004], *lv denied upon reconsideration* 2 NY3d 805 [2004]).

We further note that the court also erred in denying defendant's *Batson* challenge on the ground that there was "no pattern of discrimination." It is well established that "a prima facie case may be made based on the peremptory challenge of a single juror that gives rise to an inference of discrimination" (*Smocum*, 99 NY2d at 422), and that the "[i]mproper removal of even a single juror may be a violation of equal protection" (*id.* at 423). We therefore reverse the judgment of conviction and grant a new trial (*see People v Wilmot*, 34 AD3d 1225, 1226 [2006], *lv denied* 8 NY3d 886 [2007]).

Although we are granting a new trial on *Batson* grounds and thus need not address the contention of defendant that he was deprived of a fair trial by prosecutorial misconduct, we nevertheless note our strong disapproval of the misconduct of the prosecutor on summation in improperly shifting the burden of proof onto defendant and in improperly vouching for the credibility of the People's witnesses. Among other objectionable remarks, the prosecutor stated on summation that "[t]he only

way that you can find the defendant not guilty of burglary is if you believe that he falsely admitted to a crime that he didn't commit." The prosecutor also stated that, "to believe what [defendant] want[s] you to believe, you have to conclude that [two police detectives] are liars. Two police officers with forty years of experience between them . . . They're going to come in here and perjure themselves on the stand, and risk prosecution themselves, for what? For this?"

Contrary to the further contention of defendant, we conclude that the court properly refused to suppress his statement to the police on the grounds that the statement was the product of an unlawful arrest and was obtained in violation of his *Miranda* rights. The record of the suppression hearing establishes that the police had probable cause to arrest defendant based upon information provided by an identified citizen informant and other witnesses (*see People v Brito*, 59 AD3d 1000 [2009], *lv denied* 12 NY3d 814 [2009]; *People v Crews*, 162 AD2d 462 [1990], *lv denied* 76 NY2d 854 [1990]). In addition, the record of the suppression hearing supports the court's conclusion that defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights before he made his statement to the police (*see People v Shaw*, 66 AD3d 1417, 1418 [2009], *lv denied* 14 NY3d 773 [2010]). Defendant failed to preserve for our review his challenge to the legal sufficiency of the evidence inasmuch as he made only a general motion for a trial order of dismissal (*see People v Gray*, 86 NY2d 10, 19 [1995]). In addition, viewing the evidence in light of the elements of the crime of burglary as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]).

In view of our determination with respect to the *Batson* issue, we do not address defendant's remaining contentions.

All concur except Scudder, P.J., and Carni, J., who dissent and vote to affirm in the following memorandum.

Scudder, P.J., and Carni, J. (dissenting). We respectfully disagree with the conclusion of our colleagues that Supreme Court erred in denying defendant's *Batson* challenge. We therefore dissent.

While the majority criticizes the court for failing to conduct a "meaningful inquiry into the question of discrimination," we note that this Court has frequently approved the trial court's practice of "implicitly" determining that race-neutral explanations offered by the prosecutor are not pretextual (*see e.g. People v Dickerson*, 55 AD3d 1276, 1277 [2008], *lv denied* 11 NY3d 924

[2009]; *People v Carmack*, 34 AD3d 1299, 1301 [2006], *lv denied* 8 NY3d 879 [2007]; *People v Dandridge*, 26 AD3d 779, 780 [2006]). In addition, the court's determination that the race-neutral reasons offered by the prosecutor are not pretextual is entitled to deference (*see People v Wells*, 7 NY3d 51, 59 [2006]; *Dickerson*, 55 AD3d at 1277; *Dandridge*, 26 AD3d at 780). Judicial deference is especially appropriate where, as here, the assessment turns on the credibility of the attorney exercising the challenge (*see People v Hernandez*, 75 NY2d 350, 356 [1990], *affd* 500 US 352 [1991]). Although the majority concludes that the court failed to make *"any"* determination on the record as to the prosecutor's credibility on the issue of pretext, we are mindful of the well-settled principle that "[t]rial courts . . . need not recite a particular formula of words, or mantra" in applying the third *Batson* prong (*Dolphy v Mantello*, 552 F3d 236, 239 [2009]). "The trial court is not compelled to make intricate factual findings in connection with its ruling in order to comply with *Batson*" (*Messiah v Duncan*, 435 F3d 186, 198 [2006]). The Second Circuit in *Messiah* cited *Miller-El v Cockrell* (537 US 322, 347 [2003]), which as set forth in *Messiah* explains that " 'a state court need not make detailed findings addressing all the evidence before it' to render a proper *Batson* ruling" (*Messiah*, 435 F3d at 198). "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he [or she] may express [a] *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge" (*id.*, citing *McKinney v Artuz*, 326 F3d 87, 100 [2003]). The court in *Messiah* quoted from *McKinney* for the proposition that, " '[a]lthough reviewing courts might have preferred the trial court to provide express reasons for each credibility determination, no clearly established federal law required the trial court to do so.' " (*Messiah*, 435 F3d at 198, quoting *McKinney*, 326 F3d at 100.)

Here, after being provided with an opportunity to satisfy his "ultimate burden of persuading the court" that the prosecutor's race-neutral reasons were pretextual (*People v Smocum*, 99 NY2d 418, 422 [2003]), defense counsel requested that the court articulate the grounds for denying defendant's *Batson* challenge. In response, the court stated that "[t]he grounds were quite sufficient as stated by the District Attorney." In our view, that " 'unambiguous rejection' " of defendant's *Batson* challenge demonstrates with sufficient clarity that the trial court (1) deemed defendant to have failed to meet his ultimate burden of showing that the prosecutor's proffered race-neutral explanations were pretextual and (2) credited the prosecutor's race-neutral explanations for striking the subject venireperson (*Dol-*

*phy,* 552 F3d at 239, quoting *Messiah,* 435 F3d at 198). Thus, we conclude that the court fulfilled its duty to rule at the so-called "step three" of the *Batson* framework by expressing its intention to refuse to strike the subject venireperson after listening to the challenge, the race-neutral explanations and the arguments of the prosecutor and defense counsel.

We therefore cannot agree with the majority's conclusion, apparently based upon the absence of formulaic words, a "talismanic recitation of specific words," or a credibility mantra, that the court failed to make any determination as to pretext or the prosecutor's credibility (*Galarza v Keane,* 252 F3d 630, 640 n 10 [2001]).

The record establishes that the prosecutor offered three race-neutral reasons for exercising the peremptory challenge in question. First, the venireperson's son was accused but not convicted of a crime because, as the venireperson described it, the case was "thrown out." This is a race-neutral reason for exercising a peremptory challenge (*see People v Noone,* 8 AD3d 97, 98 [2004]). Second, the venireperson stated that she knew persons who used cocaine—the same controlled substance supporting one of the counts of the indictment against defendant. As the majority properly concludes, this is also a race-neutral explanation.

Third, the venireperson was unable to provide details of the nature or outcome of a criminal trial in which she served as a juror. The majority concludes that the venireperson's prior jury service is "irrelevant" to the service of the venireperson in this case. We disagree. A peremptory challenge based upon prior jury service is not only relevant and race-neutral but, in addition, it is "not 'pretextual on [its] face' " (*People v Richie,* 217 AD2d 84, 89 [1995], *lv denied* 88 NY2d 940 [1996], quoting *People v Dixon,* 202 AD2d 12, 18 [1994]).

The majority concludes that defendant rebutted two of the prosecutor's race-neutral explanations by showing that "similarly-situated" venirepersons were not challenged by the prosecutor. Thus, because the majority has placed this characterization upon the comparative analysis, and not because it was specifically articulated by the prosecutor, we are compelled to address it herein. In our view, the record does not support the conclusion that the other venirepersons not challenged were "similarly situated" as the challenged venireperson. One of the venirepersons shared the singular characteristic of having been accused, but not convicted, of a crime. However, this venireperson did not share the characteristics of prior jury service and knowing anyone who used cocaine. The other venireperson, also

described by the majority as "similarly situated," shared the singular characteristic of knowing persons who used cocaine. Importantly, that venireperson did not share the characteristics of prior jury service and having had a family member accused but not convicted of a crime.

Thus, in our view, although the challenged venireperson shared one similar characteristic with each of two other venirepersons, it is not accurate to describe all three venirepersons as "similarly situated." Indeed, "uneven application of neutral factors may not always indicate pretext, however, but simply an incomplete understanding of the full reasons for the prosecutor's decision to seat some jurors while challenging others" (*People v Allen*, 86 NY2d 101, 110 [1995]).

Defendant, as the moving party, had the ultimate burden of persuading the court that the prosecutor's reasons were merely a pretext for intentional discrimination (*see People v Payne*, 88 NY2d 172, 183-184 [1996]). Inasmuch as the People met their burden by " 'offering [three] facially neutral reason[s] for the challenge—even if [those] reason[s] [were] ill-founded—so long as the reason[s] [do] not violate equal protection . . . , we cannot say that the prosecutor's justifications for the use of the peremptory challenge were inadequate' " (*Wells*, 7 NY3d at 59).

We have reviewed the remaining contentions of defendant that were not addressed by the majority in light of its *Batson* determination, and we conclude that they are without merit. We therefore would affirm the judgment. Present—Scudder, P.J., Peradotto, Carni, Green and Gorski, JJ.