People v Jiles (2017 NY Slip Op 08944)





People v Jiles


2017 NY Slip Op 08944


Decided on December 22, 2017


Appellate Division, Fourth Department


Whalen, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 22, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


1033 KA 12-02285

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SHARAD JILES, DEFENDANT-APPELLANT. 






EDELSTEIN & GROSSMAN, NEW YORK CITY (JONATHAN I. EDELSTEIN OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH MERVINE OF COUNSEL), FOR RESPONDENT. 


Whalen
 Appeal from a judgment of the Monroe County Court (James J. Piampiano, J.), rendered December 6, 2012. The judgment convicted defendant, upon a jury verdict, of murder in the second degree (two counts), robbery in the first degree (two counts), robbery in the third degree (two counts) and criminal possession of a weapon in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Opinion by Whalen, P.J.: When citizens go about their lives with cell phones turned on, the phones can electronically register with the nearest cell tower every few seconds whether or not the phones are actively in use, and the business records of service providers can therefore contain information about the location of phones and their users at specific dates and times as the users travel the highways and byways of our state and nation (see generally Zanders v Indiana, 73 NE3d 178, 182 [Ind 2017]; New Jersey v Earls, 214 NJ 564, 576-577, 70 A3d 630, 637 [2013]). In this case, the People used historical cell site location information from service provider records to place defendant in the vicinity of a murder scene, and defendant unsuccessfully moved prior to trial to have the location information suppressed, claiming that the acquisition of that information was a search requiring a warrant supported by probable cause under both the Fourth Amendment to the United States Constitution and article I, § 12 of the New York Constitution. For the reasons that follow, we conclude that a warrant was not required under the circumstances here. We also reject defendant's further contention pursuant to Batson v Kentucky (476 US 79 [1986]). Accordingly, we conclude that the judgment of conviction should be affirmed.
I
Defendant's conviction arises from a robbery in which he and two unidentified accomplices held four men at gunpoint in an apartment and took money or property from at least two of the men. Another man came to the apartment while the robbery was in progress and refused to be tied up, and a struggle ensued during which that man sustained fatal gunshot wounds. One of the victims of the robbery told the police that defendant was one of the perpetrators, and that defendant had called him on the date of the incident. The People then obtained defendant's cell phone records for a four-day period beginning on the date of the robbery by means of a court order issued upon a showing of less than probable cause pursuant to the federal Stored Communications Act (see 18 USC § 2703 [c], [d]; see generally Matter of 381 Search Warrants Directed to Facebook, Inc. [New York County Dist. Attorney's Off.], 29 NY3d 231, 241-242 [2017]). The records included location information establishing that defendant called the relevant robbery victim multiple times from the general vicinity of the crime scene shortly before the robbery occurred. Defendant moved to suppress the location information, but [*2]not the portions of the records establishing that he called the victim. County Court denied the motion, and the location information was presented to the jury at trial. The jury convicted defendant of, inter alia, two counts each of murder in the second degree (Penal Law § 125.25 [1], [3]) and robbery in the first degree (§ 160.15 [2]). Defendant appeals from the judgment of conviction.
II
We first address defendant's contention that the court erred in denying his Batson applications concerning the People's use of peremptory challenges to exclude two black prospective jurors. With respect to the first prospective juror, defendant pointed out that the People had not asked her any questions, and that she had said that her work on her dissertation as a graduate student would not interfere with her ability to serve as a juror. The prosecutor then stated, inter alia, that she challenged the first prospective juror because she was studying psychology. Defendant responded that the prospective juror's status as a student was "not an extraordinary factor," but the court nonetheless denied his Batson application. With respect to the second prospective juror, defendant asserted that the People were engaging in a pattern of discriminatory strikes, and that the prospective juror had "indicat[ed] no bias." The prosecutor explained that she challenged the second prospective juror because of an answer she had given to a question concerning accomplice liability, and the court again denied defendant's application.
Inasmuch as the prosecutor offered race-neutral reasons for the challenges and the court thereafter "ruled on the ultimate issue" by determining, albeit implicitly, that those reasons were not pretextual (People v Smocum, 99 NY2d 418, 423 [2003]; see People v Dandridge, 26 AD3d 779, 780 [4th Dept 2006], lv denied 9 NY3d 1032 [2008]), the issue of the sufficiency of defendant's prima facie showing of discrimination at step one of the Batson analysis is moot (see Smocum, 99 NY2d at 423; People v Mallory, 121 AD3d 1566, 1567 [4th Dept 2014]; cf. People v Bridgeforth, 28 NY3d 567, 575-576 [2016]). With respect to the merits of defendant's contention, however, we conclude that the court did not abuse its discretion in crediting, as nonpretextual, reasons offered by the prosecutor for each of the challenges (see People v Ramos, 124 AD3d 1286, 1287 [4th Dept 2015], lv denied 25 NY3d 1076 [2015], reconsideration denied 26 NY3d 933 [2015]), i.e., the first prospective juror's status as a psychology student (see People v Ross, 83 AD3d 741, 742 [2d Dept 2011], lv denied 17 NY3d 800 [2011]; People v Quiles, 74 AD3d 1241, 1243-1244 [2d Dept 2010]; see generally People v Wilson, 43 AD3d 1409, 1411 [4th Dept 2007], lv denied 9 NY3d 994 [2007]), and the second prospective juror's accomplice-liability-related answer that the People considered unfavorable to their theory of the case (see generally People v Hecker, 15 NY3d 625, 650 [2010]).
Although defendant contends that the first prospective juror's status as a psychology student was a pretext for discrimination because it did not relate to the facts of the case, he failed to preserve that specific contention for our review (see People v Holloway, 71 AD3d 1486, 1486-1487 [4th Dept 2010], lv denied 15 NY3d 774 [2010]; see generally Smocum, 99 NY2d at 422). In any event, we conclude that defendant's contention is without merit. The lack of a relationship between a race-neutral reason for a peremptory challenge and the facts of a case does not automatically establish that the reason is pretextual (see People v Black, 15 NY3d 625, 664 [2010], cert denied 563 US 947 [2011]; People v Harrison, 124 AD3d 499, 499-500 [1st Dept 2015], lv denied 27 NY3d 998 [2016]; Ross, 83 AD3d at 741-742). We note that the record does not establish that the prosecutor engaged in disparate treatment of other panelists similarly situated to the first prospective juror (see People v Toliver, 102 AD3d 411, 412 [1st Dept 2013], lv denied 21 NY3d 1011 [2013], reconsideration denied 21 NY3d 1077 [2013]). Defendant's claim of pretext based on the allegedly disparate treatment of the second prospective juror and a panelist later seated as an alternate juror is unpreserved for our review because defendant did not renew his Batson application after the prosecutor failed to challenge the latter panelist (see id. at 412; People v Hardy, 61 AD3d 616, 616 [1st Dept 2009], lv denied 13 NY3d 744 [2009]), and we decline to exercise our power to review that claim as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
III
We now turn to defendant's cell site location information, and we conclude that the acquisition of that information was not a search requiring a warrant under either the federal or [*3]state constitution. As the People point out, this case involves only historical cell site location information, contained in the business records of defendant's service provider, which placed his phone within a certain cell site "sector" at the time he used the phone to make calls, send text messages, or receive calls or messages.
Under these circumstances, we conclude that the acquisition of the cell site location information was not a search under the Fourth Amendment to the federal constitution because defendant's use of the phone constituted a voluntary disclosure of his general location to his service provider, and a person does not have a reasonable expectation of privacy in information voluntarily disclosed to third parties (see United States v Graham, 824 F3d 421, 427-432 [4th Cir 2016]; United States v Carpenter, 819 F3d 880, 885-887 [6th Cir 2016], cert granted ___ US ___, 137 S Ct 2211 [2017]; Matter of Application of United States for Historical Cell Site Data, 724 F3d 600, 613-615 [5th Cir 2013]; see also United States v Thompson, 866 F3d 1149, 1155-1160 [10th Cir 2017]; see generally Smith v Maryland, 442 US 735, 741-745 [1979]; People v Di Raffaele, 55 NY2d 234, 241-242 [1982]). In contending otherwise, defendant relies on United States v Jones (565 US 400 [2012]) — particularly Justice Sotomayor's concurring opinion in that case (565 US at 413-418) — and Riley v California (___ US ___, 134 S Ct 2473 [2014]). In our view, that reliance is misplaced. Jones is distinguishable because it involved direct surveillance of the defendant by the police using a GPS device as opposed to information that the defendant had voluntarily disclosed to a third party (565 US at 403; see Graham, 824 F3d at 435; Nebraska v Jenkins, 294 Neb 684, 698-700, 884 NW2d 429, 441-442 [2016]). Notwithstanding Justice Sotomayor's suggestion that "it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties" (Jones, 565 US at 417 [Sotomayor, J., concurring]), we remain bound by the third-party doctrine when interpreting the Fourth Amendment "[u]ntil a majority of justices on the [Supreme] Court instructs us otherwise" (Thompson, 866 F3d at 1159). Riley, in turn, is distinguishable because it involved an inspection of the contents of the defendant's phone, rather than mere location information (___ US at ___; 134 S Ct at 2480-2481; see Carpenter, 819 F3d at 889; Jenkins, 294 Neb at 700-702, 884 NW2d at 442-443).
We recognize that certain other states have afforded cell site location information greater protection under their state constitutions than it is afforded under the federal constitution (see e.g. Massachusetts v Augustine, 467 Mass 230, 251-255, 4 NE3d 846, 863-866 [2014]; Earls, 214 NJ at 588-589, 70 A3d at 644),[FN1] and that the Court of Appeals has at times interpreted article I, § 12 of the New York Constitution more broadly than the identical language of the Fourth Amendment (see e.g. People v Weaver, 12 NY3d 433, 445-447 [2009]; People v Torres, 74 NY2d 224, 228-231 [1989]). We nonetheless conclude, consistent with the determination of the Court of Appeals with respect to roughly analogous telephone billing records, that there is "no sufficient reason" to afford the cell site location information at issue here greater protection under the state constitution than it is afforded under the federal constitution (Di Raffaele, 55 NY2d at 242; see People v Guerra, 65 NY2d 60, 63-64 [1985]; People v Hall, 86 AD3d 450, 451-452 [1st Dept 2011], lv denied 19 NY3d 961 [2012], cert denied 568 US 1163 [2013]). To the extent that "cell phone users may reasonably want their location information to remain private" under these circumstances, their recourse is "in the market or the political process" (Application of United States for Historical Cell Site Data, 724 F3d at 615).
IV
As a final matter, we agree with the People that any error in the court's refusal to suppress defendant's cell site location information is harmless. The evidence of defendant's identity as a participant in the crime is overwhelming, and there is no reasonable possibility that the verdict would have been different if the location information had been suppressed (see generally People v Allen, 24 NY3d 441, 450 [2014]; People v Crimmins, 36 NY2d 230, 237 [1975]). Both robbery victims were well acquainted with defendant and provided identification testimony at trial, and their testimony was corroborated by the portions of the phone records that defendant did not seek to suppress, which established his repeated calls to one of the victims on the date of [*4]the incident.
Entered: December 22, 2017
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: We note that Earls involved location information obtained by the police in real time rather than historical cell site location information (see Earls, 214 NJ at 571, 70 A3d at 633-634).