People v Smouse (2018 NY Slip Op 02921)





People v Smouse


2018 NY Slip Op 02921


Decided on April 27, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 27, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.


146 KA 14-00802

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ANTHONY B. SMOUSE, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DAVID R. JUERGENS OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (DANIEL GROSS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Daniel J. Doyle, J.), rendered March 11, 2014. The judgment convicted defendant upon a jury verdict of, inter alia, reckless endangerment in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of, inter alia, reckless endangerment in the second degree (Penal Law § 120.20), defendant contends that Supreme Court erred in sustaining the People's gender-based application pursuant to Batson v Kentucky (476 US 79 [1986]). We agree.
The initial panel of prospective jurors included 15 men and 6 women. Using challenges for cause, the People successfully challenged one man and one woman, and defendant successfully challenged two men and one woman. Using peremptory challenges, the People challenged five men, and defendant challenged four women. Significantly, defendant challenged two men using peremptory challenges. That left five men on the initial panel of prospective jurors, and they were all placed on the jury. The court then asked the parties to consider the first seven prospective jurors—three men and four women—on the next panel. Using challenges for cause, the People successfully challenged one man, and defendant successfully challenged one man and two women. That left one man and two women, and the People declined to challenge any of them using peremptory challenges.
When the court asked whether defendant wished to exercise any peremptory challenges, defense counsel named one of the two remaining women. The People made a Batson application, arguing: "Every person that has been preempted [sic] has been a woman." Defense counsel argued: "I don't know that that's the case." The court noted that it "didn't keep count," but that it did not recall defendant having challenged a man using a peremptory challenge. The court then prompted defendant to provide a gender-neutral reason for the challenge. Defense counsel explained that the prospective juror was a nurse at a hospital and "would see people coming in who have been potentially victims of domestic violence." The People made no further argument. The court stated that it was "inclined to agree with [the People] that a non-gender reason has not been fairly articulated." For that reason, the court sustained the People's Batson application and placed the prospective juror on the jury.
The purpose of the holding in Batson is to combat unlawful discrimination in the jury selection process (see id. at 85; People v Smocum, 99 NY2d 418, 421 [2003]). There is a well-established three-part test that courts employ to resolve applications made pursuant to Batson (see Smocum, 99 NY2d at 421-422; People v Mallory, 121 AD3d 1566, 1566-1567 [4th Dept [*2]2014]). At step one, the party alleging discriminatory use of a peremptory challenge must establish a prima facie case of purposeful discrimination by showing facts and circumstances raising an inference that the other party excused one or more prospective jurors because of his or her race or gender, or other protected characteristic (see Smocum, 99 NY2d at 421-422). It is incumbent upon the party alleging discriminatory use of a peremptory challenge "to articulate and develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed" (People v Cuesta, 103 AD3d 913, 914 [2d Dept 2013], lv denied 21 NY3d 942 [2013]; see People v Childress, 81 NY2d 263, 268 [1993]). The failure to make a prima facie case requires denial of the Batson application (see People v Rudolph, 132 AD3d 912, 913 [2d Dept 2015], lv denied 27 NY3d 1138 [2016]).
If a prima facie case of discrimination is made at step one, the party seeking to exercise the peremptory challenge must, at step two, come forward with a facially nondiscriminatory explanation for such challenge (see Smocum, 99 NY2d at 422). The burden at step two is minimal, and the explanation must be upheld if it is based on something other than the juror's race, gender, or other protected characteristic (see People v Payne, 88 NY2d 172, 183 [1996], quoting Hernandez v New York, 500 US 352, 360 [1991]). To satisfy its step two burden, the nonmovant need not offer a persuasive or even a plausible explanation but may offer "any facially neutral reason for the challenge—even if that reason is ill-founded—so long as the reason does not violate equal protection" (id. [internal quotation marks omitted]; see Purkett v Elem, 514 US 765, 767-768 [1995]). If the nonmovant cannot meet the step two burden, an equal protection violation has been established (see Smocum, 99 NY2d at 422), and the juror must be seated notwithstanding the peremptory challenge (see People v Kern, 75 NY2d 638, 657-658 [1990]).
On the other hand, if the step two burden is met, then the inference of discrimination is overcome, and the court, at step three, must make the "ultimate determination on the issue of discriminatory intent based on all of the facts and circumstances presented" (Smocum, 99 NY2d at 422). The court may make its ultimate determination without further argument from the moving party (see id.), but the court must in every case make a determination whether the nonmovant's facially nondiscriminatory explanation is pretextual (see Payne, 88 NY2d at 183). It is the moving party that always has the "ultimate burden of persuading the court that the reasons are merely a pretext for intentional discrimination" (Smocum, 99 NY2d at 422).
We agree with defendant that the issue whether the People established a prima facie case of discrimination at step one of the Batson inquiry is not moot. Whether a Batson applicant made out a prima facie case of discrimination is moot only if the court proceeded to step three of the inquiry and " has ruled on the ultimate question of intentional discrimination' " (People v Bridgeforth, 28 NY3d 567, 575 [2016], quoting Hernandez, 500 US at 359). Here, however, the court "stopped at step two and wrongly stated that the proffered reason for the challenge was not [gender] neutral[, and thus] . . . it cannot be said that the trial court [had] ruled on the ultimate question of intentional discrimination' " (Payne, 88 NY2d at 182 n 1, quoting Hernandez, 500 US at 359).
With respect to the merits of defendant's contention concerning the step one inquiry, we agree with him that the People failed to establish a prima facie case of discrimination. The only ground asserted by the People in support of their Batson application was that every peremptory challenge exercised by defendant was used to strike a woman from the jury panel. As defendant argued in opposition, the People's assertion was incorrect. In fact, defendant had previously exercised peremptory challenges to excuse two men from the jury panel. Thus, the only fact articulated by the People in support of their Batson application is belied by the record. Inasmuch as the People failed to make out a prima facie case of discrimination, the court erred in proceeding to step two of the inquiry and ultimately in seating the juror notwithstanding defendant's peremptory challenge (cf. Kern, 75 NY2d at 657-658).
We generally would reverse the judgment and grant a new trial under these circumstances (see Mallory, 121 AD3d at 1568). Here, however, defendant was convicted of relatively minor offenses and has already served his sentence, and we therefore reverse the judgment and dismiss the indictment rather than grant a new trial (cf. People v Allen, 39 NY2d 916, 917-918 [1976]; see generally People v Flynn, 79 NY2d 879, 882 [1992]; People v Hillard, 151 AD3d 743, 745 [2d Dept 2017], lv denied 30 NY3d 1019 [2017]).
Entered: April 27, 2018
Mark W. Bennett
Clerk of the Court