People v Vera (2023 NY Slip Op 06758)

People v Vera

2023 NY Slip Op 06758

Decided on December 27, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 27, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
PAUL WOOTEN
LILLIAN WAN
JANICE A. TAYLOR, JJ.

2019-06841
 (Ind. No. 1105/18)

[*1]The People of the State of New York, respondent,
v
Stalin Vera, appellant.

Patricia Pazner, New York, NY (Martin B. Sawyer of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, William H. Branigan, and Semyon Davydov of counsel), for respondent.

DECISION & ORDER
Appeal by defendant from a judgment of the Supreme Court, Queens County (Stephen Knopf, J.), rendered May 17, 2019, convicting him of robbery in the second degree and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Daniel Lewis, J.), of that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials.
ORDERED that the judgment is reversed, on the law and the facts, and a new trial is ordered.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials. The hearing record established that the defendant's spontaneous statement, made after the police officer arrested him but before Miranda warnings (see Miranda v Arizona, 384 US 436) were administered, was not triggered by any police questioning or other conduct that reasonably could have been expected to elicit a declaration from him (see People v Whaul, 63 AD3d 1182; People v Whyte, 47 AD3d 852). 
We are nevertheless compelled to reverse the judgment of conviction based on the Supreme Court's erroneous denial of the defendant's challenge to the prosecutor's peremptory strikes of three Black prospective jurors: prospective juror nos. 6 and 10 from the first panel, and prospective juror no. 11 from the second panel (see Batson v Kentucky, 476 US 79). In Batson, the United States Supreme Court formulated a three-step test to assess whether peremptory challenges [*2]have been used to exclude potential jurors on the basis of race, gender, or other protected categories (see People v Smocum, 99 NY2d 418, 421). At step one, the moving party must make a prima facie case of purposeful discrimination by "showing that the facts and circumstances of the voir dire raise an inference that the other party excused one or more jurors for an impermissible reason" (id. at 421). If the moving party makes a prima facie showing, the inquiry proceeds to step two, and the burden shifts to the adversary to provide a facially neutral explanation for the challenge (see id. at 422). If the nonmoving party "offers facially neutral reasons supporting the challenge, the inference of discrimination is overcome" (People v Allen, 86 NY2d 101, 109). Once facially neutral reasons are provided, the inquiry proceeds to step three, and the burden shifts back to the moving party to prove purposeful discrimination, and "'the trial court must determine whether the proffered reasons are pretextual'" (People v Hecker, 15 NY3d 625, 634-635, quoting People v Allen, 86 NY2d at 104), including whether the reasons apply to the facts of the case (see People v Richie, 217 AD2d 84, 89).
Here, the parties do not dispute that defense counsel made a prima facie showing at step one with respect to the subject prospective jurors. Moreover, at step two, the prosecutor provided facially race-neutral explanations for his exercise of peremptory challenges against the subject prospective jurors (see People v Allen, 86 NY2d at 109-110).
However, at step three, the Supreme Court improperly determined that the facially race-neutral reasons proffered by the prosecutor during step two were not pretextual. With respect to prospective juror no. 6, the prosecutor stated that since this prospective juror "lives on church property," there were concerns "as to religious reasons, sympathy reasons." However, during voir dire, this prospective juror was never questioned concerning her religious affiliation, or whether her living situation would make her more sympathetic to the defendant (see People v Bell, 126 AD3d 718, 719; cf. People v McArthur, 178 AD2d 612, 612). Additionally, when stating that this prospective juror's nephew "had a drug case that went to trial and he was found not guilty," the prosecutor misstated the record, which reflects that the individual with the "drug case" was the son of a friend of this prospective juror. Taken in context, this incorrect statement further evidenced the pretextual nature of the prosecutor's facially race-neutral reasons for excluding prospective juror no. 6 (see Flowers v Mississippi, ___ US ___, ___, 139 S Ct 2228, 2250).
With respect to prospective juror no. 10, the prosecutor's facially race-neutral reason for the peremptory challenge was that this prospective juror had lived at Creedmoor and worked with the "criminally insane" for 33 years, and that "she's been doing it her whole life so she's had involvement with the criminal justice system and dealing with people who have been involved with the criminal justice system." Similarly, for prospective juror no. 11, the prosecutor stated that he had sought to strike this prospective juror, in part, because he had worked with handicapped and disabled individuals, including those who had mental health issues and criminal cases. However, "[t]he prosecutor did not offer any explanation for how the[se] juror[s'] employment [situations] related to the factual circumstances of the case or the qualifications of the juror[s] to serve" (People v Hall, 64 AD3d 665, 665; see People v Bell, 126 AD3d at 719). Moreover, prospective juror no. 10 stated that she had been retired from her position for approximately 23 years and that she would "go on the facts" of the case, and she unequivocally answered "no" when questioned by the Supreme Court as to whether she would have "any more sympathy or less sympathy for either side because of the work [she] did." Similarly, prospective juror no. 11 answered "no" when questioned by the court as to whether his former job would "interfere with [his] ability to be a fair juror on this criminal case."
Since there must be a new trial, we note that the prosecutor engaged in instances of improper conduct during summation (see People v Lewis, 178 AD3d 952, 953-954; People v Davis, 147 AD3d 1077, 1079-1080). Specifically, the prosecutor improperly made an unqualified pronouncement of the defendant's guilt, stating, "I'm here asking you to strip [the defendant] of his presumption of innocence because, ladies and gentleman, he's not" (see People v Smith, 288 AD2d 496, 497).
In light of our determination, we need not reach the defendant's remaining contentions.
DUFFY, J.P., WOOTEN, WAN and TAYLOR, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court