OPINION OF THE COURT
 

 Bellacosa, J.
 

 This Court recently refined the three-step procedure that trial courts are required to follow in determining allegedly discriminatory use of peremptory challenges against prospective jurors
 
 (People v Allen,
 
 86 NY2d 101;
 
 see, Batson v Kentucky,
 
 476 US 79). These appeals in three unrelated cases require the Court to review the application of these procedures when the People assert discriminatory use of peremptory challenges by the defense
 
 (see, People v Kern,
 
 75 NY2d 638). In all three cases, the trial courts upheld several objections from the People that defense peremptory strikes discriminated on the basis of race (two in
 
 People v Payne,
 
 two in
 
 People v Jones
 
 and one in
 
 People v Lowery).
 

 I.
 

 A.
 

 In
 
 People v Payne,
 
 defendant was convicted of obstructing governmental administration and second-degree criminal contempt, arising out of an incident in a Brooklyn courtroom
 
 *178
 
 involving two court officers. During the jury examination phase of his trial, defendant, who is African-American, challenged four white prospective jurors: Numbers Two, Six, Eight and Nine. Only Numbers Eight and Nine, whom the trial court ordered seated despite defendant’s effort to peremptorily excuse them, are at issue on this appeal. The People made a
 
 Batson-Kern
 
 objection, alleging that the four peremptory challenges were racially discriminatory. The trial court required defense counsel to "[g]ive me race-neutral reasons.” Defense counsel’s explanation for his challenge to juror Number Eight was as follows:
 

 "I just note for him, he’s lived in the same neighborhood in Brooklyn for 50 years and that his criteria for judging a witness’ credibility was limited. He seemed to believe that one would judge the credibility of a witness just by observing their body language and I think the Court Officers are going to be more calm witnesses than Mr. Payne will. So, I had a problem with that.”
 

 As to Number Nine, counsel stated:
 

 "[A]ll I could say was that I had trouble getting any information out of him. He sat there quietly for the most part. All his answers were yes or no and I’m insecure with that because I have no idea who this person is and that makes both me and Mr. Payne uncomfortable. We’d like to elicit dialogue from jurors and, so, we couldn’t be confident that he could be fair and impartial.”
 

 Notably, counsel did not challenge other, similarly-situated jurors, who had either lived in one place for a long time or gave laconic answers to counsel’s questions.
 

 After hearing defense counsel’s proffered reasons, the trial court ruled that the peremptory challenge to juror Number Eight could not stand because the race-neutral explanation was "totally disingenuous.” As to Number Nine, the trial court stated, "the fact that he answered yes or no, other jurors answered yes or no. You didn’t challenge them. I find that to be a racially motivated challenge and I will disallow that challenge.” The court allowed the defense peremptory challenges to Numbers Two and Six.
 

 The Appellate Division affirmed, and on the pertinent issue ruled:
 

 
 *179
 
 "[T]he Supreme Court properly determined that the explanations proffered by defense counsel for the exercise of his peremptory challenges against the two subject panelists were mere pretext offered in an attempt to conceal a racially discriminatory intent. This determination is entitled to great deference on appeal and will not be disturbed where, as here, it is supported by the record” (213 AD2d 565, 565-566).
 

 A Judge of this Court granted leave to appeal to the defendant, and we now affirm.
 

 B.
 

 In
 
 People v Jones,
 
 the defendant, an African-American, was convicted in Brooklyn of selling crack/cocaine. After the first round of jury examination prior to trial, defense counsel exercised peremptory challenges against six white prospective jurors. The prosecutor objected, asserting racial discrimination. The trial court was satisfied that the People had made a prima facie showing of racial discrimination and asked defense counsel to provide "non-pretextual” reasons for the peremptory challenges. Defense counsel objected, arguing the lack of a prima facie showing, but nonetheless proffered purportedly race-neutral explanations as to each of the challenged jurors.
 

 The excusai of two of the six jurors — those for whom the trial court ultimately disallowed the defense peremptory challenges — are the only ones at issue in this case. As to juror Number Two, defense counsel stated:
 

 "[He] was challenged based on a consultation with my client. He, based on his own feelings regarding the types of individuals that he wanted to sit on the jury that would judge him, felt that juror number two did not respond in a way that he felt that that individual would be fair to him.”
 

 Counsel articulated his challenge to juror Number Six as follows:
 

 "[H]is wife is a legal secretary and has experience in that area and, again, number six was one of the jurors that on consultation with my client, he again felt that one of the peremptory challenges that we have that he felt was to be used because of the way he felt about this particular person.”
 

 
 *180
 
 The court found, however, that "the reasons given for [Numbers Two and Six] are pretextual and those jurors will be seated.” The Trial Judge denied the rest of the People’s objections— allowing the defense peremptory strikes to stand as to the other four prospective jurors. The court also granted in part and denied in part a
 
 Batson
 
 objection by the defendant pertaining to some of the People’s peremptory challenges.
 

 The Appellate Division affirmed the conviction (213 AD2d 677). A Judge of this Court granted defendant leave to appeal and we now modify and conditionally remit for further proceedings.
 

 C.
 

 In
 
 People v Lowery,
 
 defendant was convicted in Brooklyn of murder in the second degree and criminal possession of a weapon in the third degree. After the fourth round of jury selection at defendant’s trial, the prosecutor made a
 
 BatsonKern
 
 objection, alleging a defense pattern of striking white jurors throughout all four rounds, culminating with six-out-of-six challenges of white jurors in the fourth round. In response to a trial court inquiry, defense counsel gave the following explanation for his challenge to juror Number Three, the only juror at issue on this appeal:
 

 "[B]asically, I looked at her, she’s from Bay Ridge. I’m looking at — I would like to increase, have more the type of people who come from the neighborhood he comes from. She’s from Bay Ridge. She’s a high school teacher.
 

 "She didn’t appeal to me, she didn’t appeal — it’s a peremptory challenge. She did not appeal to me.”
 

 The court ordered Number Three to be seated over defendant’s objection, but upheld the defense peremptory strikes for the other five. The court stated, "That one is overruled on the basis of the objection made. It’s not race neutral, in my view.”
 

 The Appellate Division affirmed, holding that the trial court correctly found a prima facie showing of purposeful discrimination and, thus, properly required defense counsel to proffer race-neutral reasons. As to juror Number Three, the court held that, "[w]hile the defense counsel’s explanations were generally race-neutral, we agree with the court’s conclusion, which is to be accorded great deference on appeal” that the challenge to juror Number Three was pretextual (214 AD2d 684, 685).
 

 A Judge of this Court granted defendant leave to appeal, and we now modify and conditionally remit for further proceedings.
 

 
 *181
 
 II.
 

 A.
 

 In
 
 Batson v Kentucky
 
 (476 US 79,
 
 supra),
 
 the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the peremptory challenge of prospective jurors based on their race (US Const 14th Amend). The
 
 Batson
 
 rule circumscribes racially rooted peremptory excusáis by lawyers for both the defense and prosecution equally
 
 (see, People v Kern,
 
 75 NY2d 638, 643,
 
 supra;
 
 NY Const, art I, § 11;
 
 see also, People v Allen,
 
 86 NY2d 101, 104, n 1,
 
 supra; Georgia v McCollum,
 
 505 US 42). The essence of a
 
 Batson
 
 violation is intentional discrimination that rises to an equal protection violation
 
 (Hernandez v New York,
 
 500 US 352, 359-360,
 
 affg
 
 75 NY2d 350). The cases of the past 10 years honor and enforce these constitutional principles and promulgate protocols designed to condemn, expose and root out such practices with complementary rules that implement the objectives.
 

 When one side in a criminal case claims that the other side’s exercise of peremptory strikes is infected by purposeful discrimination, the trial court must engage in a three-step process. Initially, the party contesting the peremptory challenges — the prosecution in these three cases — must satisfy the court with a prima facie showing that the peremptory strikes related to the race of the jurors sought to be removed
 
 (Batson v Kentucky, supra,
 
 at 96-97). If that threshold showing is met, the lawyer seeking the excusáis — the defense in these three cases — has the burden of coming forward "to overcome the inference of purposeful discrimination”
 
 (People v Allen,
 
 86 NY2d 101, 109,
 
 supra).
 
 To do so, that party must voice a "race-neutral explanation for striking the jurors in question”
 
 (Hernandez v New York,
 
 500 US 352, 358-359,
 
 supra).
 
 When the proffered explanations appear facially race-neutral, the trial court must then determine "whether the opponent of the strike [here, the People] has proved purposeful racial discrimination”
 
 (Purkett v Elem,
 
 514 US 765, —, 115 S Ct 1769,1 771). The focus at this third step is whether the "race-neutral” explanation is a mere pretext for racial discrimination
 
 (id.).
 
 The ultimate burden of persuasion at the third stage rests unalterably on the party objecting to the peremptory strikes — in these three cases, the People.
 

 B.
 

 At the outset, all three defendants-appellants assert that the trial courts erred at the first step by concluding that the prose
 
 *182
 
 cution had satisfactorily shown a prima facie case of discrimination merely by noting that all of the challenged jurors were white. We need not address or resolve this threshold argument because the subsequent rulings by the trial courts in
 
 Payne
 
 and
 
 Jones
 
 on the ultimate issue of purposeful discrimination and pretext moot this first-step issue.
 
 [1]
 
 As stated by the Supreme Court in
 
 Hernandez v New York
 
 (500 US 352, 359,
 
 supra):
 

 "Once a prosecutor [or defense counsel, as in these three cases] has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant [or prosecution] had made a prima facie showing becomes moot.”
 

 Thus, our final-stage appellate review of these cases focuses only on steps two and three.
 

 C.
 

 In
 
 People v Allen
 
 (86 NY2d 101,
 
 supra),
 
 the issue involved the allegedly discriminatory use of peremptory challenges
 
 by the People.
 
 The Court emphasized that "where [defense] counsel has perceived something suggesting a discriminatory motive in the questioning of a prospective juror, we require that those concerns be fully articulated to the trial court during its factual inquiry”
 
 (id.,
 
 at 110-111).
 

 Allen,
 
 however, presents a different procedural posture from the instant cases. In
 
 Allen,
 
 a
 
 defendant
 
 was claiming on appeal that a trial court
 
 should have found pretext
 
 at step three. Because the defense failed to articulate its reasons at the trial level for such a ruling, the trial court was held not to have erred in finding that the defendant had not carried its burden of proof below
 
 (People v Allen, supra,
 
 86 NY2d, at 111). Here,
 
 *183
 
 the
 
 People
 
 are defending on appeal the finding of the trial courts, which
 
 did find pretext,
 
 at least in
 
 Payne
 
 and
 
 Jones.
 
 If a pretext finding is sufficiently explicated and the record supports it — as it does in
 
 Payne
 
 — no articulation problem under
 
 Allen
 
 is implicated. Indeed, this analysis is consistent with and complementary to
 
 Allen’s
 
 requirements and has been endorsed by the Supreme Court in
 
 Purkett v Elem
 
 (514 US 765, 115 S Ct 1769,
 
 supra).
 

 The step two "explanation” required of a striking party is quite minimal, and mere
 
 facial
 
 race neutrality fulfills the burden of production
 
 (People v Allen, supra,
 
 86 NY2d, at 109). Thus, a court must uphold a proffered explanation as race neutral (that is, allow the peremptory strike to remove the prospective juror) if the reason is "based on something other than the race of the juror”
 
 (Hernandez v New York, supra,
 
 500 US, at 360). Indeed, step two "does not demand an explanation that is persuasive, or even plausible”
 
 (Purkett v Elem,
 
 514 US 765, —, 115 S Ct 1769, 1771,
 
 supra).
 
 As we further explained in
 
 Allen,
 
 "step two is met by offering
 
 any facially neutral reason
 
 for the challenge — even if that reason is ill-founded — so long as the reason does not violate equal protection”
 
 (People v Allen, supra,
 
 86 NY2d, at 109 [emphasis added], citing
 
 Purkett v Elem, supra).
 

 At the third step, trial courts are authorized to act on outlandish or entirely evanescent assertions, even if they appear race neutral on their face. At this last step, "the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination”
 
 (Purkett v Elem, supra,
 
 514 US, at —, 115 S Ct, at 1771).
 
 Purkett
 
 and
 
 Allen
 
 carefully reflect the cadenced but related features of steps two and three, emphasizing that although "a trial judge may choose to disbelieve a silly or superstitious reason” put forth by the striking party, that Judge is not required to do so, and must in all cases make a step three pretext determination
 
 (id).
 

 The distinctive procedural development in these cases concerns the trial courts’ responsibility to make a sufficient record to allow for meaningful appellate review that insures and reflects that each party fulfills its burden and has an opportunity for input. When a trial court finds that the opponent of the peremptory strikes — here, the People, but usually defense counsel objecting to alleged prosecutorial discriminatory strikes as in
 
 Allen
 
 — has carried its ultimate and unalterable burden of persuasion, that ruling and its basis must be
 
 *184
 
 reflected, and gouged on the record made. The legal burdens of production and persuasion must be correctly allocated and maintained, and a meaningful record must reflect that these prerequisites have been satisfied.
 

 Thus, when a trial court exercises its authority "to disbelieve a silly or superstitious reason”
 
 (Purkett v Elem, supra,
 
 514 US, at —, 115 S Ct, at 1771) and renders its ruling promptly and without further inquiry after step two — without hearing more discussion from either or each side again and after a full and unrestricted step two record opportunity — such rulings do not constitute per se reversible error. To be sure, both sides must be afforded adequate opportunities to make their respective records as may be indicated and appropriate in fulfillment of their particular burdens or in support of or opposition to particular positions. Indeed,
 
 Allen
 
 teaches that the parties are obligated to do so, if they want their concerns properly taken into account.
 

 Likewise, the trial courts bear the judicial responsibility of ensuring that an adequate record is made and of reflecting the basis for their rulings. When Trial Judges are satisfied, however, that unlawful discrimination has been employed by either side, there should be no artificial procedural barriers to their taking firm and prompt action. Immediate action may even be the most effective and just course of proceeding. The circumstances of voir dire examinations in individual cases vary enough by the nature of the process so that this exceptional range of procedural flexibility is appropriate.
 

 By way of summary, we stress that adherence to the promulgated protocols is the best guarantee of an adequate reviewable record. We are satisfied, however, that procedural formalism with a rigid set of categorical imperatives is not a
 
 sine qua non
 
 for the effective and fair operation of the three-step protocol, which is designed to ensure the proper operation and correct application of the
 
 Batson-Alien
 
 principles. Thus, in the
 
 Batson-Kern-Allen
 
 context relevant here, if the party asserting the peremptory strike puts forward race-neutral reasons and the other side says nothing more, the Trial Judge
 
 may
 
 nevertheless find purposeful discrimination — pretext— based on the court’s founded and articulated rejection of the race-neutral reason. We turn to the application of these principles in the three cases now before us.
 

 
 *185
 
 III.
 

 A.
 

 The record developed in the trial court in
 
 People v Payne
 
 provides a sufficient basis to conclude that defendant’s asserted reasons for the peremptory excusáis of two jurors, though facially race neutral, were ultimately pretextual. Although the court did not at that stage use the word "pretext,” that finding is reasonably inferred and supportable. The trial court characterized the proffered reason for the challenge of juror Number Eight as "totally disingenuous.” It also rendered a specific bottom-line conclusion that the challenge to Number Nine was "a racially motivated challenge.”
 

 Initially, the proffered reasons as to both jurors were race neutral and satisfied the defendant’s step two burden. The reason given for the challenge to juror Number Eight, that he was a long-term resident of one Brooklyn neighborhood, is unrelated on its face to race. Likewise, defense counsel’s claim that extracting information from Number Nine was difficult was also unrelated to the race of the juror. It thus fell to the trial court to decide whether these evanescent "reasons” were pretextual, so long as it did not relieve the People of the ultimate burden of persuasion in this regard. There is no claim or basis to conclude on this record that either party was restricted specifically or by the process employed from making full and complete arguments and submissions.
 

 As to the two jurors still at issue at our stage of this matter, the trial court’s finding of pretext, as reviewed and affirmed by the Appellate Division, suffers no fatal impediment. While defendant’s purported reason for challenging juror Number Eight was his long-term residence in one Brooklyn neighborhood, he did not challenge at least two other long-term residents of specific neighborhoods. Similarly, juror Number Nine was not the only juror whose responses made it difficult to elicit information (see,
 
 People v Allen, supra,
 
 86 NY2d, at 110 [uneven application of strikes "is among the factors we have identified as raising an inference of discrimination”]). Thus, the trial court’s decision to rule directly on the step three aspect in this case — in contrast to the gaps in the other two cases decided today — may not be said to be incorrect as a matter of law under these circumstances. We conclude that this is a case with a sufficient record base allowing appellate approbation of reasonable trial court procedural discretion.
 

 
 *186
 
 B.
 

 Defendant’s proffered reason in
 
 People v Jones
 
 for striking juror Number Six — that the juror’s wife was a legal secretary — is facially race neutral. As defendant has abandoned his challenge to juror Number Two on this appeal, we need not consider the race neutrality of that strike. The defense thus met its responsive burden of production as to juror Number Six, requiring the trial court to make the ultimate determination of discrimination based on the People’s burden of persuasion as to pretext at step three.
 

 The defense, however, proffered its race-neutral reasons at step two in response to the court’s command to articulate "non-pretextual” reasons for the challenges. The trial court’s premature and summary compaction of steps two and three shifted the ultimate burden of persuasion and, thus, is crucially distinguishable from
 
 People v Payne.
 
 By its merger of the step two and three requirements, the trial court here skewed and squeezed the process into a functional bypass of the key, final protocol we have put in place.
 

 The Appellate Division order sustaining the trial court’s ruling, therefore, cannot be upheld. Because the trial court is in a position on remittal to complete the protocols, we remit to Supreme Court, Kings County, for such proceedings as are necessary to satisfy all the requirements. If these requirements are not satisfied, the judgment of conviction should be vacated and a new trial ordered, but if the court is again satisfied that the reasons were a pretext for racial discrimination, the judgment of conviction should be amended to show that result
 
 (see, People v Hawthorne,
 
 80 NY2d 873, 874;
 
 People v Bolling,
 
 79 NY2d 317, 325).
 

 C.
 

 As with
 
 People v Jones
 
 and in coptrast to the circumstances and developments in
 
 People v Payne,
 
 the trial court in
 
 People v Lowery
 
 lapsed into a procedural error. When it erroneously ruled that the defendant’s proffered reason for excluding juror Number Three was not race neutral, the court then entirely and functionally eliminated step three from the
 
 Allen
 
 three-step protocol. Plainly, defendant’s reason — that the juror was from Bay Ridge and a high school teacher — did not on its
 
 *187
 
 face implicate the juror’s race.
 
 [2]
 
 Importantly, the step two requirement is a burden of
 
 production.
 
 Defendant satisfied that burden here, but the trial court neither considered the People’s burden of
 
 persuasion
 
 nor did it even rule on pretext. The flaw in this case reflects a complete gap in the interlocking procedural mechanism and safeguards this Court has promulgated.
 

 The Appellate Division’s attempt to cure that lapse is unavailing, so we remit to Supreme Court, Kings County, for that court to make a step-three determination regarding whether the race-neutral reason proffered by defendant was pretextual. If the court finds that it was, the judgment of conviction should be amended to show that result. If, however, the court finds the reason to be nonpretextual, the judgment of conviction should be vacated and a new trial ordered (see,
 
 People v Hawthorne, supra,
 
 80 NY2d, at 874;
 
 People v Bolling, supra,
 
 79 NY2d, at 325).
 

 D.
 

 Our holdings and goal in deciding these cases by complementary application and analysis are designed to illustrate and emphasize this Court’s insistence on the uniform principles and procedures. This view also reflects a realistic recognition that so long as procedural burdens and record-making opportunities and manifestations are fulfilled and evident, specific trial courts’ handling of this procedure in variable and complex circumstances can satisfy appellate scrutiny.
 

 The trial court in
 
 People v Payne
 
 sufficiently maintained the defense obligation of proffering race-neutral reasons at step two and then found pretext, with enough record support, without ever relieving the prosecution of its ultimate burden in that regard. Ruling that way at the conclusion of step two did not dispense with the People’s ultimate burden of persuasion as to step three. Thus, we discern no legal basis to displace that determination. For the reasons already explained, however, the orders in
 
 People v Jones
 
 and
 
 People v Lowery
 
 should be modified and the cases conditionally remitted, because the procedural deficits leave doubt that the ultimate protocols were followed or satisfied.
 

 
 *188
 
 Accordingly, in
 
 People v Payne,
 
 the order of the Appellate Division should be affirmed; in
 
 People v Jones
 
 and
 
 People v Lowery,
 
 the orders of the Appellate Division should be modified and the cases should be conditionally remitted for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 In
 
 People v Payne:
 
 Order affirmed.
 

 In
 
 People v Jones
 
 and
 
 People v Lowery:
 
 Order modified by remitting to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . In
 
 Lowery,
 
 the Trial Judge stopped at step two and wrongly stated that the proffered reason for the challenge was not race neutral. Thus, unlike
 
 Payne
 
 and
 
 Jones,
 
 it cannot be said that "the trial court [had] ruled on the ultimate question of intentional discrimination”
 
 (Hernandez v New York, supra,
 
 500 US, at 359). In
 
 Lowery,
 
 then, the issue of whether the People established a prima facie inference of purposeful discrimination by the defendant would be implicated, had it been properly preserved. Defendant’s general objection, however — "to this whole procedure” — did not adequately preserve this question for this Court’s review, because counsel did not state the ground for the objection or argue that the People had failed to establish a prima facie case (CPL 470.35 [1]; 470.05 [2];
 
 see, People v Robinson,
 
 36 NY2d 224, 228).
 

 [2]
 

 . We do not accept the proposition that the potential association of a juror’s neighborhood generally with members of one race or ethnicity is a race-related factor, per se, for purposes of the application of these protocols. That kind of potential geographical or neighborhood linkage may, however, be a factor ultimately to be weighed into the determination whether a proffered reason is pretextual.