[31 NYS3d 478]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHAE-
QUAWN WATSON, Appellant.

First Department, May 10, 2016

24

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation,* New York City (*Jody Ratner* of counsel), for appellant.

*Robert T. Johnson, District Attorney,* Bronx (*Melanie A. Sarver* and *Peter D. Coddington* of counsel), for respondent.

## OPINION OF THE COURT

MANZANET-DANIELS, J.

The issue in this case is whether the prosecution exercised its peremptory challenges in a discriminatory manner when it

struck all African American males from a panel of prospective jurors.

During the first round of voir dire, nine jurors were selected, including a woman who stated that "sometimes the police are doing their job and sometimes they are not. They could be forceful at times if they feel threatened. They do what they have to do." The first panel did not include any black men.

During the second round, three jurors and two alternates were seated, including a woman who stated she had "seen things go both ways" with the police. An African American male, Smalls, was struck for cause after telling the court that he had been the victim of police harassment. Smalls admitted that he wasn't sure he could "take police testimony at face value and possibly be impartial to it."

Three African American males remained on the second panel of jurors: Hewitt, Prosser and Lortey. Hewitt was unemployed with no children. He stated that in high school he would usually take the lead in group projects. He agreed that he had a strong personality and stated that he would stick to his guns if he really believed in something. Hewitt had been stopped and frisked "a couple of times," but denied that it had "sour[ed]" him on the police department, stating, "[I]t's just the breaks sometimes."

Prosser, an elevator mechanic, had no children and played basketball on the weekends. He had relatives in law enforcement, including a father in federal law enforcement and an uncle in internal affairs. When asked whether having family members in law enforcement would "color" his view of the witnesses in the case, he stated, "What they do doesn't affect what I think." He had no opinion as to whether a police officer would be more or less likely to twist the truth, while other prospective jurors pointedly referred to a police "brotherhood."

Lortey was a utility worker for Con Edison and the father of a son.

An unnamed juror replied, "Yes," when asked whether he had had a "[b]ad experience with cops," stating that he had the "same experience" mentioned by Smalls, the juror excused for cause. When asked whether his experience would affect how he evaluated the testimony of the police officer in the case, the juror responded, "I don't know . . . I'm not sure what it would trigger emotionally to impact my judgment."

After inquiry was made of Hewitt regarding his encounters with the police, an unnamed juror stated, "You know, the stop

and frisk policy, that happens to me every day, five days out of the week," but qualified that "that's . . . [the police] doing their job."

At the end of round two, the prosecutor exercised peremptory challenges to exclude Prosser, Hewitt and Lortey. Defense counsel requested that the prosecutor give a race-neutral reason for striking every black male juror on the panel, as per *Batson v Kentucky* (476 US 79 [1986]) (*see People v Payne*, 88 NY2d 172, 181 [1996]). The prosecutor explained that both Hewitt and Prosser[1] had been harassed by police officers and stated that he feared it would color their view of Officer Hobson's testimony.

The court asked whether counsel was "saying it's a gender bias, which is not a color bias." Defense counsel refused to choose, framing the challenge as "the interaction of both race and gender." The court asked if there was any law on the issue. Defense counsel did not know any "off the top" of his head, but asked for an opportunity to brief the court on the relevant case law.

The court thereupon stated, "[B]e that as it may, I've listened to your explanations. I find them to be absolutely race neutral." The court stated that it would have granted a for-cause challenge as to Lortey. The court noted that Hewitt had experiences being harassed. At the mention of Prosser's name, the prosecutor immediately interjected, stating that he had noticed Prosser "making faces" throughout the proceedings. The court stated, "You're covered. Denied."

When it appeared that it might be necessary to convene a third panel of prospective jurors in order to select an alternate, the court inquired whether the defense and prosecution might agree on an alternate from the second panel. Defense counsel argued for Hewitt, noting that he did not appear to be "stressed out" by his experiences and had stated that he would "stick to the letter of the law." He agreed that Lortey and Prosser had demonstrated that they "didn't want to be [t]here," but did not in any way allude to negative interactions either had had with the police. The parties settled on a female juror as an alternate, ending the process of jury selection.

The following day, before opening statements, defense counsel attempted to renew his *Batson* challenge. The court

---

1. The identity of the prospective juror who spoke of being harassed by the police is not evident from that record. It is not clear that the juror was Prosser, or Lortey, for that matter.

stated, "The record is done. What else?" Defense counsel reminded the court that it had asked for case law on the subject, and the court replied, "Fine. You got your appeal. Fine. Bring it up on appeal. I'm not changing it now." Defense counsel asked to make a written submission, to which the court replied, "Sure," and the parties continued on to other pretrial matters.

Before resting, defense counsel moved for a mistrial based on the *Batson* challenge.

■ Defense counsel preserved the issue that a prima facie case of discrimination had been established by making the argument during jury selection and filing a written memorandum with the court (*see* CPL 470.05 [2]). He also objected at subsequent stages of the *Batson* inquiry. However, as evidenced from the colloquy, the judge cut the defense attorney off in a peremptory manner—even stating at one point, "Fine. Bring it up on appeal. I'm not changing it now"—preventing counsel from explicating his arguments. We would in any event reach the issue in the interest of justice (*see* CPL 470.15 [3] [c]; [6]).

The dissent asserts that we have "consistently declined" to exercise interest of justice review in a *Batson* case. We would decline to so circumscribe a power that is unique to the Appellate Division. The result would be to deny a defendant the opportunity to have a fair jury seated merely because his or her counsel misapprehends the *Batson* three-step inquiry. It should be noted that when we have declined to exercise interest of justice jurisdiction in a *Batson* case we have almost invariably gone on to state, as an alternate holding, that the *Batson* claim has no merit. Further, there is precedent to exercise interest of justice jurisdiction to entertain a *Batson* claim (*see People v Harris*, 151 AD2d 961 [4th Dept 1989]).

As a matter of federal and state constitutional law, neither the prosecution nor the defense may exercise peremptory challenges in a discriminatory manner (*see Batson v Kentucky*, 476 US 79 [1986]; *People v Payne*, 88 NY2d 172, 181 [1996]). When a *Batson* claim is raised, the trial court must engage in a three-step process. First, the opponent of the peremptory challenge must make a prima facie showing that the strike related to the stricken juror's protected class. The burden then shifts to the proponent of the strike to overcome the inference of intentional discrimination by giving a facially-neutral explanation for the peremptory strike. At step three, the burden shifts back to the moving party to "persuad[e] the court that [the proferred] reasons are merely a pretext for intentional discrimination"

(*People v Hecker*, 15 NY3d 625, 656 [2010], *cert denied* 563 US 947 [2011]).

Defense counsel made a prima facie showing of discrimination requiring the prosecutor to give racially-neutral reasons for exercising peremptory challenges against all of the eligible black male jurors.[2]

 It is necessary to discuss, at this stage, whether black males are a cognizable group for *Batson* purposes. *Batson* of course prohibits the striking of jurors on the basis of race. The *Batson* rationale was extended to gender in *J. E. B. v Alabama ex rel. T. B.* (511 US 127, 130-131 [1994]). The Court of Appeals instructs us that "[e]limination of a potential juror because of generalizations based on race, gender or other status that implicates equal protection concerns is an abuse of peremptory strikes" (*People v Allen*, 86 NY2d 101, 108 [1995]).

Although the Supreme Court has not yet ruled on whether *Batson* extends to combined race-gender groups, state courts examining the issue under their own constitutions have generally recognized an intersectional status based on race and gender as a cognizable group for *Batson* purposes (*see e.g. People v Guardino*, 62 AD3d 544, 545-546 [1st Dept 2009] [black females], *affd on other grounds sub nom. People v Hecker*, 15 NY3d 625 [2010], *cert denied* 563 US 947 [2011]; *People v Garcia*, 217 AD2d 119, 122 [2d Dept 1995] [black females]; *People v Jackson*, 213 AD2d 335 [1st Dept 1995] [black females], *appeal dismissed* 86 NY2d 860 [1995]; *Commonwealth v Jordan*, 439 Mass 47, 62, 785 NE2d 368, 380 [2003] [white males]; *People v Motton*, 39 Cal 3d 596, 605-606, 704 P2d 176, 181 [1985] [black females]).

In *Guardino*, the dissenting justice reasoned that an "intersectional status" of race and sex (in that case, black women) should be treated in the same manner as race and gender for *Batson* purposes (62 AD3d at 548 [Catterson, J., dissenting]). It would indeed be incongruous to consider race and gender as cognizable statuses, but not a combined race and gender status.

The wholesale exclusion of black men from the jury gives rise to a mandatory inference of discrimination at the first step

---

2. It may be noted that once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the court has ruled on the ultimate issue of purposeful discrimination, the preliminary issue of whether a defendant has made a prima facie showing becomes moot (*see Hernandez v New York*, 500 US 352, 359 [1991]).

of the *Batson* inquiry (*compare Hecker*, 15 NY3d at 653-654).[3] The prosecutor used peremptory strikes to eliminate black male jurors while not excluding others who expressed skepticism about the credibility of police officers, such as the woman on the first panel who stated that "sometimes the police [were] not [doing their job]," and "could be forceful . . . if . . . threatened," and the woman on the second panel who said she'd "seen things go both ways" with the police. Prosser had close relatives in law enforcement, a factor which would generally predispose him to the prosecution, yet he too was eliminated.

The prosecutor's putatively neutral explanations cannot be assessed and resolved as a matter of law, given the ambiguities and lack of clarity in the record. The explanations could have been exposed as a pretext for intentional discrimination had the court conducted a proper *Batson* inquiry. Only two jurors claimed to have been harassed by the police: Smalls, the juror who had been struck for cause, and another unnamed juror who may or may not have been African American. Hewitt stated only that he had been stopped and frisked "a couple of times," but pointedly declined to accept the prosecutor's suggestion that it had left a bad "taste" in his mouth or "sour[ed]" him on the police. He stated, "[I]t is what it is," and "[I]t's just the breaks sometimes." Prosser had relatives in law enforcement, including an uncle in internal affairs and a father who worked in the federal system, a factor that would tend to dispose him favorably to the prosecution. There is no record concerning any alleged negative encounters between Prosser or Lortey and the police. As even the prosecutor recognizes, on this incomplete record, there is no way of definitively attributing the comments of unnamed jurors to either Prosser or Lortey. The dissent's arguments at this stage presuppose that the comments of the unnamed jurors may be definitely assigned to Prosser. Even the dissent is compelled to admit that the prosecutor failed to give any explanation whatsoever for the challenge as to Lortey.

We do not subscribe to the People's reasoning that the judge's comments (to the effect that he would not expect the prosecu-

---

**3.** It is true, as the prosecutor asserts, that numerical arguments alone will not generally give rise to an inference of discrimination. Thus, in a case where, for example, 50% of a group has been excluded, a court will examine other factors to determine whether a prima facie case has been made. Such factors become less relevant as the number of excluded jurors of a cognizable group approaches and attains 100%.

tor to select Lortey or Prosser and that he would have struck Lortey for cause if asked) serve as record-based proof that the prosecutor's challenge was not merely pretextual. It is "the trial courts' responsibility to make a sufficient record to allow for meaningful appellate review that insures and reflects that each party fulfills its burden and has an opportunity for input" (*People v Payne*, 88 NY2d at 183). The record is pointedly deficient as to Lortey, as to whom nonpretexual explanations were not even offered, and Prosser, as to whom no record exists to support the assertion that he had been the victim of police harassment.

■ The court failed to follow the three-step *Batson* protocol. Although the prosecutor furnished some explanations for the strikes, he gave them only as to Hewitt and Prosser, not Lortey. Even if those explanations were accepted as facially neutral, the court was obliged to continue on to step three and afford defense counsel the opportunity to show that the prosecutor's stated reasons for the strikes were pretextual. Defense counsel was never given the opportunity to argue that the prosecutor's explanations were a pretext for discrimination. The court improperly combined steps and deviated from the *Batson* protocol, which cannot be considered harmless or nonprejudicial to defendant (*see People v Payne*, 88 NY2d at 186 [trial court erred by "premature and summary compaction of steps two and three" and thereby "skewed and squeezed the process into a functional bypass of the key, final protocol we have put in place"]).

Accordingly, the appeal from the judgment of the Supreme Court, Bronx County (Thomas A. Breslin, J.), rendered May 17, 2013, convicting defendant, after a jury trial, of assault in the second and third degrees and resisting arrest, and sentencing her, as a second felony offender, to an aggregate term of four years, should be held in abeyance and the matter remanded to Supreme Court for further proceedings as are necessary to satisfy the requirements of *Batson v Kentucky* (476 US 79 [1986]).

FRIEDMAN, J. (dissenting). Defendant's conviction for committing assault against police officers (not only by striking them, but also by biting and kicking them), and for resisting arrest, is based almost entirely on police testimony. During voir dire proceedings, in response to an objection raised by defendant under *Batson v Kentucky* (476 US 79 [1986]), the prosecutor explained that he had exercised peremptory chal-

lenges against all remaining African American men on the panel because these panelists had admitted to having had negative encounters with the police. Defendant made no effort to show that this explanation—obviously cogent if the People were to have a fair trial, given that defendant was charged with crimes against the police and that the People's case would stand or fall on the jury's assessment of police testimony—was pretextual. Now, on appeal, defendant, although conceding that her *Batson* claim is unpreserved, argues that we should, in the interest of justice, order a hearing to pursue the pretext claim that her trial counsel understandably did not think worth pursuing. I believe that this request should be denied, and respectfully dissent from the majority's order holding this appeal in abeyance for a hearing to determine whether the voir dire proceedings were conducted in a manner consistent with the requirements of *Batson*.

Simply put, defendant's *Batson* claim is unpreserved—as defendant concedes in her appellate brief—and we have consistently declined to review unpreserved *Batson* claims in the interest of justice; indeed, the majority cannot locate a single decision by this Court, in the three decades since *Batson* was decided, in which we reviewed an unpreserved *Batson* claim.[1] I see no reason to deviate from that practice in this case. In nonetheless granting review of these unpreserved claims, the majority ignores the failure of defendant's trial counsel to raise timely, specific objections to the actions of the trial court that are said to have violated defendant's *Batson* rights "when the court had an opportunity of effectively changing the same" (CPL 470.05 [2]). Moreover, in the specific context of *Batson* claims, the Court of Appeals has "underscore[d] the importance both of trial court attention to each of *Batson*'s well-articulated, sequential steps, and of *trial counsel attention to placing their objections on the record so they may be addressed by the court*"

---

1. The sole Appellate Division case cited by the majority in which an unpreserved *Batson* claim was reviewed in the interest of justice is *People v Harris* (151 AD2d 961 [4th Dept 1989]). This decision—apparently the only one the majority could find in which a *Batson* issue was reviewed in the exercise of the Appellate Division's interest-of-justice jurisdiction—does not constitute a precedent for reviewing an unpreserved *Batson* claim at this late date, 30 years after *Batson* was decided by the United States Supreme Court. The *Harris* court noted that the trial of that case "predated the Supreme Court's decision in *Batson*; thus, defense counsel had no precedent upon which to rely in making a mistrial motion" (151 AD2d at 962). No such excuse was available for failing to preserve a *Batson* issue when defendant's case was tried in 2013.

(*People v Smocum*, 99 NY2d 418, 423-424 [2003] [emphasis added]; *see also People v Payne*, 88 NY2d 172, 182 n 1 [1996] ["Defendant's general objection, however—'to this whole (*Batson*) procedure'—did not adequately preserve this question for this Court's review, because counsel did not state the ground for the objection"]). Accordingly, I would proceed to consider the remaining issues that defendant raises on her appeal.

Because the nature of the charges against defendant are relevant to the *Batson* issue, I will briefly summarize the facts the People proved to the jury's satisfaction at trial. On the date of her arrest, defendant was attending a cookout at which a disturbance broke out. Police officers arrived at the cookout to restore order, and placed an individual under arrest. After the police had placed the arrested individual in a police car, defendant approached the car and started screaming at the officer within. The officer observed that defendant was "visibly intoxicated, . . . belligerent, screaming, [and] very uncooperative." Defendant ignored the officer's repeated demands that she step away from the vehicle. When the officer tried to move her away from the vehicle, defendant began fighting with him, and two other officers at the scene responded to assist in restraining her. Defendant fought all of the officers, in the process biting one of them, inflicting a painful injury. After defendant was finally restrained and placed in the back seat of a police car, she kicked one of the officers in the back so forcefully that the officer was ejected from the vehicle. Based principally on police testimony giving the above account, defendant was charged with, and convicted of, assault in the second and third degrees and resisting arrest.

The *Batson* claim in this case is that the prosecution exercised peremptory challenges to exclude all African American men who remained in the jury pool after the exercise of for-cause challenges. At the outset, I note that I fully agree with the majority that a class defined by both race and gender—in this case, African American men—implicates *Batson*. However, the question of whether defendant made a prima facie showing of a *Batson* violation based on the People's peremptory challenges to black men was rendered moot by the trial court's ruling on the ultimate issue of discriminatory intent (*see Payne*, 88 NY2d at 182, citing *Hernandez v New York*, 500 US 352 [1991]). Although the trial court initially expressed skepticism as to whether African American men (as opposed to African Americans generally) constitute a class

cognizable under *Batson*, the court then effectively accepted defendant's position that black men do constitute such a class by proceeding to hear the prosecutor's proffer of facially nondiscriminatory explanations for the People's peremptory challenges. Whether correct or incorrect, the court's ruling that the People had provided nonpretextual and nondiscriminatory explanations for the challenges assumed that the use of peremptories for the purpose of excluding all black men from the jury would have been unlawful. Accordingly, the court's initial hesitation in recognizing black men as a protected *Batson* class provides no basis for disturbing defendant's conviction.[2]

The relevant venire panel included four black men. The People challenged one of these panelists (Smalls) for cause; defendant does not complain of the court's allowance of this for-cause challenge on appeal. The People then raised peremptory challenges to the three remaining black men on the panel, whose names were Prosser, Hewitt and Lortey. For the exclusion of two of these individuals (Prosser and Hewitt), the prosecutor, in response to defendant's *Batson* challenge, gave the nondiscriminatory explanation that these panelists had admitted to having had unpleasant encounters with the police.[3] Presumably by oversight, the prosecutor failed to give an explanation for the challenge to Lortey.

As is evident from the majority's writing, defendant's claim of error on appeal boils down to two points: (1) that the court truncated steps two and three of the *Batson* inquiry (as more fully explained below) into one step, contrary to the Court of Appeals' admonition (*see Smocum*, 99 NY2d at 423); and (2) that the People never provided any explanation for the peremptory challenge of one of the three black men (Lortey). From the majority's own account of the trial proceedings, however, it is

---

**2.** The majority's statement that "[d]efense counsel preserved the issue that a prima facie case of discrimination had been established," while technically accurate, is irrelevant to this appeal because defendant is not aggrieved on the prima facie issue. To reiterate, the court, after initially expressing hesitation, assumed that a prima facie case had been made and proceeded to the next step in the *Batson* inquiry. Defendant cannot appeal on an issue on which he prevailed at trial.

**3.** In response to defendant's *Batson* objection to the striking of all black male panelists, the prosecutor stated: "Mr. Prosser indicated that he had been harassed by police officers. So had Mr. Hewitt. He also indicated that he had been harassed by police officers every day. I was afraid strategically that that would color their view of Officer Hobson's testimony, who was on the street that night." The prosecutor later added that Prosser had been "constantly making faces" and had otherwise indicated that he did not "want to be here."

plain that defendant failed to preserve either of these objections.

At this point, it is helpful to review the procedure trial courts should follow when a *Batson* claim is raised. A claim that peremptory challenges have been used to exclude a class of potential jurors in violation of *Batson* triggers a three-step test described by the Court of Appeals as follows:

> "As a first step, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges. Second, the nonmoving party must give a race-neutral reason for each potential juror challenged. In step three, the court determines whether the reason given is merely a pretext for discrimination" (*Smocum*, 99 NY2d at 420).

On this appeal, as previously noted, I concur with the majority that defendant made out a prima facie *Batson* claim before the trial court, based on the exclusion of all black male prospective jurors. However, that point is moot, since the court proceeded to rule on the question of discriminatory intent after hearing the People's explanation. Whether the court followed the proper procedure in making this ruling, and whether that ruling has sufficient support in the record, are, to reiterate, issues that defendant failed to preserve for appellate review.

"As with other trial rulings, appellate review of *Batson* objections sensibly requires preservation as mandated by CPL 470.05 (2)" (*People v Jones*, 284 AD2d 46, 48 [1st Dept 2001], *affd* 99 NY2d 264 [2002]). A *Batson* challenge is not preserved when counsel fails to allege pretext to refute opposing counsel's facially nondiscriminatory justification of a peremptory challenge (*People v Smocum*, 99 NY2d at 423; *see also Jones*, 284 AD2d at 48 ["A failure to controvert the explanations for the use of peremptory challenges constitutes a failure to preserve a *Batson* claim"], *affd* 99 NY2d at 272 ["By accepting the People's explanation without any additional objection at a time that it could have been addressed, defendant failed to preserve a challenge to (a panelist's peremptory exclusion)"]). Furthermore, counsel's responsibility to preserve a *Batson* challenge is not automatically excused if the court fails to permit counsel to argue pretext. Rather, counsel has a duty to object on the record if the court does not adhere to proper procedures, and to call upon the court to permit counsel to argue that the explanation given for exclusions of the relevant panelists are pretextual.

The Court of Appeals made it abundantly clear in *Smocum* that the requirement of preservation fully applies to claims of *Batson* error. In that case, the Court of Appeals agreed with the defendant that the trial court had failed to adhere to the proper three-step *Batson* procedure in that it "melded steps two and three . . . by immediately concluding that the reasons [proffered by the People for their challenges] were acceptable . . . without first allowing defense counsel to make an argument that the reasons were pretextual" (*id.* at 423). Nonetheless, the Court of Appeals held that the *Batson* claim was unpreserved for appellate review because defense counsel failed to press her objection to the exclusion of one panelist, after the trial court accepted the People's ambiguous explanation without giving the defense an opportunity to respond, "at a time when any ambiguity . . . could have been clarified" (99 NY2d at 423). Turning aside the defendant's argument that the trial court had somehow prevented his counsel from arguing that the People's reasons were pretextual, the Court of Appeals further stated:

> "Finally, we reject defendant's argument that counsel was 'squelched' and not permitted to make her pretext case with respect to [one of the prospective jurors]. Despite the sometimes enormous pressures of trial, it is for courts to discharge their responsibilities under the law and for counsel to voice objection when they do not. In particular, we underscore the importance both of trial court attention to each of *Batson*'s well-articulated, sequential steps, and of trial counsel attention to placing their objections on the record so they may be addressed by the court. In this way, the law can be observed and potential error avoided" (*id.* at 423-424).[4]

While this Court, unlike the Court of Appeals, has the power to review unpreserved claims of error in the interest of justice,

---

4. The majority quotes the Court of Appeals' statement in an earlier decision that refers to "the trial courts' responsibility to make a sufficient record to allow for meaningful appellate review [of *Batson* issues] that insures and reflects that each party fulfills its burden and has an opportunity for input" (*Payne*, 88 NY2d at 183). While it is indeed the trial court's responsibility to adhere to the *Batson* protocol (as the Court of Appeals reaffirmed in *Smocum*), nothing in the quoted statement from *Payne* absolves defense counsel of the obligation, explicitly recognized in *Smocum*, to preserve *Batson* issues for appellate review by raising an express objection when the court errs by

we have consistently declined to exercise this power to review unpreserved *Batson* claims. For example, in *People v Washington* (56 AD3d 258 [1st Dept 2008], *lv denied* 11 NY3d 931 [2009]), "[a]fter the prosecution explained its reasons for the challenges at issue, defense counsel remained silent and raised no objection when the court accepted these reasons as nonpretextual" (*id.* at 259). We held that this inaction by defense counsel in *Washington* failed to preserve both defendant's "substantive objections to the court's ultimate ruling" and "his claim that, in arriving at its ruling, the court failed to follow the proper *Batson* procedure," and we declined to review either the substantive claim or the procedural claim in the interest of justice (*id.*). As we observed in another case, "This Court has consistently declined review where a '[d]efendant failed to preserve his current claim that the court did not follow the three-step *Batson* protocols in determining various claims of discriminatory exercise of peremptory challenges' " (*People v McLeod*, 281 AD2d 325, 326 [1st Dept 2001], *lv denied* 96 NY2d 904 [2001], quoting *People v Swails*, 250 AD2d 503 [1998], *lv denied* 92 NY2d 906 [1998]; *see also People v Tucker*, 22 AD3d 353 [1st Dept 2005], *lv denied* 6 NY3d 760 [2005]; *People v Thomas*, 275 AD2d 234 [1st Dept 2000], *lv denied* 95 NY2d 893 [2000]; *People v Hedian*, 258 AD2d 363 [1st Dept 1999], *lv denied* 94 NY2d 824 [1999]).

Here, defendant raised the objection that the People had violated *Batson* by using peremptory challenges to strike all of the black men on the voir dire panel. In response, the People offered as a nondiscriminatory justification for these peremptory challenges the panelists' previous interactions with the police that might affect their impartiality in considering police testimony. The court, after hearing the People's explanation, and discussing with counsel whether African American men constituted a protected class under *Batson*, accepted the People's explanation for the challenges without first affording the defense an opportunity to argue that the explanation was pretextual. However, as the following excerpt from the transcript of the proceedings on March 4, 2013 shows, after the court made its ruling, defense counsel neither objected that the ruling was procedurally premature nor attempted to argue

---

deviating from the three-step protocol. As previously noted, the Court of Appeals declined to review one of the *Batson* issues raised in *Payne* because trial counsel failed to preserve it by articulating a sufficiently specific objection (*see Payne*, 88 NY2d at 182 n 1).

that the People's explanations were pretextual. Defense counsel also failed to point out that the People had not offered a specific nondiscriminatory justification for the challenge to one of the black male panelists, Lortey. Rather, counsel simply moved on to exercise defendant's remaining peremptory challenges:

> "THE COURT: But be that as it may, I've listened to your [the prosecutor's] explanations. I find them to be absolutely race neutral. In fact, I would have knocked Lortey off for cause if asked. Hewitt, clearly he's had such experiences himself with being harassed himself, and Prosser—

> "MR. MARAYNES [the prosecutor]: Also just to add to my record, Mr. Prosser both, you know, I noticed him during the last panel and during this panel, he was constantly making faces and it was just—he said I don't want to be here, so I think that it was [sic] that he wouldn't have been a good juror for race neutral reason[s].

> "THE COURT: You're covered. Denied.

> "MR. FERNANDEZ [defense counsel]: We'd ask to use defense seven, sorry, defense eight for seat two, Ms. Ramphal. Defense nine, seat three, Mr. Singh. And the last."

The next day, March 5, 2013, before the jurors were called into the courtroom to begin the trial, defense counsel offered to provide the court with case law concerning the *Batson* issue. The court stated that, while it would not change its ruling, it would accept a written brief on the issue. As he had done before, defense counsel then moved on to a different issue, without asking the court to give him the opportunity to argue that the prosecution's explanation was pretextual:

> "MR. FERNANDEZ [defense counsel]: Good morning, your Honor. With respect to the Batson challenge that I had—

> "THE COURT: The record is done. What else?

> "MR. FERNANDEZ: Well, your Honor—

> "THE COURT: I said the record is done. What else?

> "MR. FERNANDEZ: Your Honor asked me whether there's case law—

"THE COURT: Fine. You got your appeal. Fine. Bring it up on appeal. I'm not changing it now.

"MR. FERNANDEZ: I would like to put the case—

"THE COURT: Submit it in writing. That's what I told you yesterday. What else?

"MR. FERNANDEZ: Can I have a brief on the issue?

"THE COURT: Sure. Absolutely. What else?

"MR. FERNANDEZ: With respect to missing Rosario for Officer Bradley who I understand will testify today, she's issued a summons to a witness at the scene Shamala Miller. The summons itself has been destroyed, I understand."

During trial, just before the defense rested its case, counsel moved for a mistrial based on the *Batson* issue and filed a written submission in support of that application. The court denied the motion but noted that the written *Batson* submission was "part of the record."

The foregoing excerpts from the transcripts of the proceedings on March 4 and 5, 2013 demonstrate that defense counsel never brought to the court's attention that, after the People offered *Batson*-compliant reasons for the peremptory challenges to which the defense had objected, defendant was entitled to an opportunity to attempt to persuade the court that the proffered reasons were pretextual. This omission is particularly glaring in the colloquy on March 4, which took place when further questioning of the panelists was still possible, before the selected jurors had been sworn and the challenged panelists had been excused. Thus, any uncertainty in the existing record as to which panelist gave which responses, and any ambiguity as to what the panelists' responses meant, is entirely due to defense counsel's evidently deliberate judgment not to pursue the issue of pretext. I see no reason to presume, as the majority evidently does, that this was an oversight on defense counsel's part. Rather, he may well have reached a reasoned determination, based on factors not apparent on the cold record, that a pretext argument would fail and was not worth pursuing. While the court apparently overlooked that the defense was entitled to an opportunity to argue pretext, nothing stopped defense counsel from raising that point with the court before moving on to other issues. The majority makes on

defendant's behalf exactly the kind of " 'squelch[ing]' " argument that the Court of Appeals rejected in *Smocum* (99 NY2d at 423).

Defendant's very brief written submission in support of the application for a mistrial under *Batson* failed to preserve the specific *Batson* errors now raised on appeal, apart from the issue of whether black men constitute a cognizable class—which, as previously discussed, is a red herring on this appeal.[5] The written submission focuses on defense counsel's inaccurate perception that the court had "dismissed the suggestion that black men could be considered a cognizable class." Although defense counsel wrote that the court had prevented him from "ask[ing] for a non-pretextual, race and gender neutral explanation for striking [Prosser, Hewitt and Lortey]," the record shows that counsel did ask for such an explanation, and that the prosecutor explained his challenges to Prosser and Hewitt. The written submission does not point out either the court's failure to follow the three-step *Batson* protocol or the prosecutor's failure to explain the striking of Lortey specifically. Nor does the written submission offer any argument that the explanations the prosecutor gave for challenging Prosser and Hewitt were pretextual.[6]

---

**5.** Indeed, defendant's appellate brief, by asking us to reach the *Batson* issue in the interest of justice "[t]o the extent that preservation was required," essentially concedes that his trial counsel's written submission did not succeed in preserving any issues that would provide grounds for reversal.

**6.** Thus, defendant plainly did not preserve any issue concerning whether the record supports the prosecutor's statement that Prosser and Hewitt had experienced negative encounters with the police. If the prosecutor, in explaining the striking of these panelists, mischaracterized what they had said during voir dire, it was defense counsel's responsibility to raise this point before the trial court during jury selection, when the facts could have been easily clarified (*see Smocum*, 99 NY2d at 423 [defense counsel failed to preserve a *Batson* issue when she failed to press for clarification of the People's reason for a challenge "at a time when any ambiguity—if indeed she actually perceived any ambiguity—could have been clarified"]). Contrary to the majority's assertion, my position is not based on any "presuppos[ition]" about which statements by jurors unidentified in the trial transcript "may be definitely assigned to Prosser," but on the undeniable fact that it was the responsibility of defense counsel, if he believed that his client might have a viable *Batson* claim, to make a clear record as to which panelist said what "at a time when any ambiguity . . . could have been clarified" (*Smocum*, 99 NY2d at 423). Further, the majority's suggestion—not made even in defendant's appellate brief—that the prosecutor did not challenge panelists, other than black men, who had expressed skepticism about the credibility of the police, is another point that defense counsel made no effort to raise before

In sum, defendant's *Batson* claims are not preserved for appellate review, and I would not deviate from our precedents to review them in the interest of justice. The majority's statement that declining to review unpreserved *Batson* claims "den[ies] a defendant the opportunity to have a fair jury seated" baselessly assumes that an unfair jury necessarily results any time defense counsel fails to preserve a *Batson* claim. Where a potential *Batson* claim that can be discerned on a cold record has not been asserted, or—as here—has been dropped, it may well be that, for reasons not appearing on the record, defense counsel made a reasonable judgment that the *Batson* claim was not viable. The disturbing implication of the majority's statement is that we should uniformly review unpreserved *Batson* claims, turning the preservation requirement into a dead letter, and necessitating numerous hearings and retrials based on claims that were not pursued because defense counsel reasonably judged that they were not viable.

Further, not only are defendant's *Batson* claims unpreserved, but, in addition, the concessions of defense counsel on the existing trial record are sufficient to support rejecting those claims on the merits.[7] After the court had ruled on the exclusions at issue, the court and counsel reconsidered the excluded jurors for possible service as an alternate to avoid having to call a new panel. At that point, defense counsel stated that he "would agree that Lortey and Prosser demonstrated in a variety of ways that they didn't want to be here"—plainly a concession that the People had race-neutral grounds for excluding these panelists. As to the third panelist, Hewitt, defense counsel stated: "Mr. Hewitt sounded to me not as, *not as stressed out* by the situation, the experiences he's had" (emphasis added). In other words, defense counsel recognized that even Hewitt had been "stressed out" by his encounters with the police, albeit not to the same extent as Lortey and Prosser.[8] Thus, defense counsel ultimately conceded that all three of the peremptorily

the trial court, even in his written submission. In any event, a person who merely expresses skepticism about the police is not similarly situated to a person who has actually had a negative experience with the police.

7. Thus, even if correct, there is no force in the majority's statement that our decisions declining interest-of-justice review to unpreserved *Batson* claims "almost invariably . . . state, as an alternate holding, that the *Batson* claim has no merit." Such an alternate holding would be appropriate in this case, as well.

8. The majority renders defense counsel's statement on the record that Hewitt "sounded to me . . . not *as* stressed out by the situation" (emphasis added) as "he [Hewitt] did not appear to be 'stressed out' by his experiences."

challenged black men at issue had been excluded for valid, nondiscriminatory reasons. While Hewitt stated that he would try to assess the evidence impartially in spite of his past experience with the police, the prosecutor's judgment not to take those assurances at face value was not a *Batson* violation.

For the reasons discussed in the preceding paragraph, I conclude that, even upon a review of defendant's unpreserved *Batson* claims in the interest of justice (contrary to our precedents consistently declining to do so), those claims should be rejected on the merits on the existing record, and no further *Batson* hearing is required. But, as previously noted, I believe that we should adhere to our precedents and decline interest of justice review of defendant's unpreserved *Batson* claims. Either way, the *Batson* claims should be found unavailing, and we should proceed to consider the remaining issues defendant raises on her appeal.

It is apparently the majority's view that the Bronx County prosecutor, in striking the three potential jurors at issue, may have been motivated by prejudice against African American men. It seems to me, rather, that, in striking these panelists, the prosecutor was motivated by a desire to empanel a jury that would be fair to the People in a case involving a violent confrontation between the accused and police officers, in which police officers were the victims and chief witnesses for the prosecution. Indeed, defendant's trial counsel apparently took a similar view, since he did not press the *Batson* objection after the prosecutor articulated the basis for his exercise of the peremptory challenges. I see no justification for a further *Batson* hearing in view of defense counsel's choice not to pursue the claim further after the prosecutor gave a valid, race- and gender-neutral reason for his actions, and in view of defense counsel's concessions on the record that essentially defeat the claim in any event. For this Court to consider the issue nonetheless, and to remand the matter for a hearing, contrary to our consistent practice of declining to review unpreserved claims of this nature, derails our *Batson* jurisprudence and establishes a precedent that we will struggle to distinguish in deciding future appeals.

---

This is plainly an unfair presentation of the record, since it turns a statement comparing Hewitt's reaction to those of the other two men into a denial that Hewitt had any negative reaction at all to his experiences.

MAZZARELLI, J.P., RICHTER and GISCHE, JJ., concur with MANZANET-DANIELS, J.; FRIEDMAN, J., dissents in a separate opinion.

Appeal from judgment, Supreme Court, Bronx County, rendered May 17, 2013, held in abeyance, and the matter remanded to Supreme Court for further proceedings as are necessary to satisfy the requirements of *Batson v Kentucky* (476 US 79 [1986]).