*850 McCarthy, J.
(concurring in part and dissenting in part). “The Constitution forbids striking even a single prospective juror for a discriminatory purpose” (Snyder v Louisiana, 552 US 472, 478 [2008] [internal quotation marks, brackets and citations omitted]; accord Foster v Chatman, 578 US —, —, 136 S Ct 1737, 1747 [2016]). Once a Batson challenge is made, a trial court must engage in a three-step process, the steps of which are well-established by clear case law stretching back more than 30 years (see Foster v Chatman, 578 US at —, 136 S Ct at 1747; Batson v Kentucky, 476 US 79, 97-98 [1986]). The third step of this inquiry is the “key, final protocol,” in which the trial court both resolves factual disputes and makes findings of fact and assessments of credibility (People v Payne, 88 NY2d 172, 186 [1996]). A trial court that resolves a Batson challenge without proceeding to this third step “falls short of [providing] a meaningful inquiry into the question of discrimination” (People v Smocum, 99 NY2d 418, 423 [2003] [internal quotation marks and citations omitted]). Further, “trial courts bear the judicial responsibility of ensuring that an adequate record is made and of reflecting the basis for their [Batson] rulings” (People v Payne, 88 NY2d at 184). It is uncontested that, here, County Court failed to proceed to the third step of defendant’s Batson challenge. In contrast to the majority, we find that, as in People v Watson (141 AD3d 23, 30 [2016]), corrective action in the interest of justice is warranted based on this failure. We would remit the matter for further proceedings necessary to satisfy the Batson inquiry and, therefore, we respectfully dissent in this regard.
We agree with the majority’s analysis as to the application of the first two steps of the Batson inquiry. Our focus is on the potential harm of County Court’s failure to proceed to the third step, in which defendant would be afforded the opportunity to persuade the court that two nonwhite jurors, juror No. 2 and juror No. 14, were struck based on purposeful discrimination, prior to the court making a determination as to whether the prosecutor’s proffered reasons for striking those jurors were pretextual (see Foster v Chatman, 578 US at —, 136 S Ct at 1747; People v Jones, 136 AD3d 1153, 1158 [2016], lv dismissed 27 NY3d 1000 [2016]). As to this third step, “[t]he trial court has a pivotal role in . . . Batson claims . . . [including] an evaluation of the prosecutor’s credibility” (Snyder v Louisiana, 552 US at 477). This is especially true when a prosecutor cites a juror’s demeanor as the reason for the use of the peremptory challenge (see e.g. id. at 479).
*851 In assessing whether corrective action is warranted despite defendant’s failure to preserve the issue,[3] we turn to the questions raised by the record that cannot be resolved given the absence of the step-three inquiry. Notably, the prosecutor’s sole articulated reason for striking juror No. 2 was that he was not paying attention. The two relevant comments that the prosecutor had made during the previous questioning was that juror No. 2 had looked “deep in thought” and that he looked like he was “thinking really hard.” In the absence of a step-three inquiry, the record is bereft of any findings by County Court as to whether or not juror No. 2 had been paying attention or whether or not it credited the proffered explanation that he had not been paying attention.
Regarding juror No. 14, a black woman, the prosecutor stated that he did not want her on the jury because she believed that “she was a victim of racial profiling.” County Court failed to make the crucial finding resolving whether that reason was pretextual.[4] This more probing inquiry should have considered the views expressed by juror No. 14, in response to a number of questions by the prosecutor regarding a decade-old “[s]hop-lifting” charge against her that had been dismissed by a court:[5] she believed she had been treated fairly by law enforcement and the court system; she described the police officer involved, the judge involved and her attorney as “very nice”; and she did not have preconceived notions about law enforcement or about the court system. After receiving these responses — responses which one might expect from an exemplary prospective juror— the prosecutor asked her whether she had felt “targeted.” In response, and for the first time, she mentioned race, stating that she “believ[ed] it was a case of racial profiling . . . *852 [b]ecause of how [she] looked and how [she] was dressed.”[6] She further stated that this conclusion was “just [her] opinion” and that it was “just how [she] processed it.” Although the aforementioned colloquy was unique from all others based on the fact that juror No. 14 mentioned racial profiling, it was also unique from all others based on the fact that she was the only juror asked about “target[ing].” The prosecutor had multiple colloquies with jurors regarding criminal accusations and convictions and never asked another juror for an opinion about whether the subject of those accusations or convictions had been “targeted.”[7] County Court was uniquely situated to make factual findings regarding the foregoing before making a credibility determination as to whether or not the prosecutor’s stated reason for using a peremptory strike against this juror was pretextual.
On this record, “[t]he prosecutor’s putatively neutral explanations cannot be assessed and resolved as a matter of law, given the ambiguities and lack of clarity” (People v Watson, 141 AD3d 23, 29 [2016]). In light of this conclusion, and upon consideration of the critical role that Batson plays in the provision of justice, we would hold defendant’s appeal in abeyance and remit the matter for further proceedings necessary to satisfy the requirements of Batson v Kentucky (476 US 79 [1986], supra) and its progeny (see Foster v Chatman, 578 US —, 136 S Ct 1737; Snyder v Louisiana, 552 US 472 [2008], supra; Powers v Ohio, 499 US 400 [1991]; People v Watson, 141 AD3d 23, 30 [2016]).
Aarons, J., concurs.
Ordered that the judgment is modified, on the law, by reversing defendant’s conviction of criminal possession of marihuana in the fourth degree under count three of the indictment and vacating the sentence imposed thereon; matter remitted to the County Court of Albany County for further proceedings pursuant to CPL 460.50 (5) and for a new trial on count three; and, as so modified, affirmed.

. In considering the importance of preservation, it is notable that the interests that Batson was designed to protect are not all represented by a defense attorney’s zealous advocacy. “Batson was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors” (Powers v Ohio, 499 US 400, 406 [1991] [internal quotation marks and citations omitted]). “Batson recognized that a prosecutor’s discriminatory use of peremptory challenges harms the excluded jurors and the community at large” (id. [citation omitted]).

. As the majority notes, step two can be satisfied by unpersuasive or implausible reasons, as long as they are facially neutral. That step was satisfied here by the literal conclusion that juror No. 14 mentioned racial profiling in response to a question that did not mention race.

. Before the prosecutor’s inquiry had even begun, juror No. 14 had already assured County Court that she could be fair and impartial, that she would not hold that prior “episode” against the People and that she understood that the episode and the trial at issue were “completely different situations.”

. Notably, juror No. 14 never stated who she felt had racially profiled her.

. The majority concludes that it would have been “unnecessary” to ask other jurors about targeting, because those who admitted to having been accused of a crime had already expressed ill will toward the People prior to any colloquy with the prosecutor. That analysis, however, overlooks the fact that a number of jurors discussed criminal accusations against “relative[s] or close friend [s].” Multiple jurors assured the prosecutor that they could be fair despite criminal accusations against relatives or friends, and the prosecutor did not ask any of those jurors whether the relevant relative or friend had been “targeted.”